# IN THE SUPREME COURT OF TENNESSEE
## AT JACKSON
### November 2, 2011 Session

## STATE OF TENNESSEE v. MARK ANTHONY McNACK

**Appeal by Permission from the Court of Criminal Appeals**
**Circuit Court for Madison County**
No. 03220     Donald H. Allen, Judge

---

**No. W2010-00471-SC-R11-CD - Filed December 13, 2011**

---

Upon the defendant's plea of guilty to theft, the trial court imposed a three-year sentence to be served in the community corrections program. Although the defendant violated a condition of his release shortly after September 30, 2003, the revocation warrant was not filed and issued until ten months later. While revoking the community corrections sentence and ordering the defendant to serve the duration of his sentence in prison, the trial court approved credit for time served only through September 30, 2003, the estimated date of the violation. The Court of Criminal Appeals reversed, holding that the credit should have extended until the issuance of the revocation warrant. We hold that the filing date of the revocation warrant begins the tolling of sentence credits. The judgment of the Court of Criminal Appeals is, therefore, affirmed.

**Tenn. R. App. P. 11; Judgment of the Court of Criminal Appeals is Affirmed**

GARY R. WADE, J., delivered the opinion of the Court, in which CORNELIA A. CLARK, C.J., JANICE M. HOLDER, WILLIAM C. KOCH, JR., and SHARON G. LEE, JJ., joined.

Robert E. Cooper, Jr., Attorney General and Reporter; Gordon W. Smith, Associate Solicitor General; David H. Findley, Senior Counsel; James G. Woodall, District Attorney General; Shaun A. Brown, Assistant District Attorney General, for the appellant, State of Tennessee.

George Morton Googe, District Public Defender, and Gregory D. Gookin, Assistant Public Defender, for the appellee, Mark Anthony McNack.

## OPINION
### Facts and Procedural History

On July 28, 2003, Mark Anthony McNack (the "Defendant") pled guilty to theft of property over $1,000, a Class D felony. Tenn. Code Ann. §§ 39-14-103(a), -105(3) (2003).

The trial court imposed a sentence of three years, all of which was to be served on community corrections. On July 27, 2004, Feleicia Elion, the supervising community corrections case officer, filed an affidavit alleging that the Defendant had failed to report since September 30, 2003, and had not responded to correspondence. She stated that he had also missed a home visit, had failed to secure employment, and was delinquent in the payment of supervision fees, court costs, and restitution. Although the warrant was signed by the trial judge on July 27, 2004, the Defendant was not arrested until January 6, 2010, over five years later.[1]

On January 25, 2010, the trial court conducted an evidentiary hearing on the Defendant's alleged failure to comply with the community corrections program requirements. The Defendant admitted that he had failed to meet the terms of his release and explained that he "didn't know they put a warrant out on [him]." He stated that while he was aware that a warrant would be issued if he failed to report, he did not communicate with his case manager as required because he was "confused." After concluding that the Defendant had violated the terms and conditions of his placement in the community corrections program, the trial court entered an order of revocation, directed the Defendant to serve the duration of his sentence in prison, and gave credit for time served from the date of his sentence until the date of his last report on September 30, 2003, "because he obviously never reported beyond that date."

The Defendant appealed, arguing that the trial court should have awarded credit for time served in the program through July 27, 2004, the date that the revocation warrant was signed. While upholding the revocation of the Defendant's participation in the community corrections program, the Court of Criminal Appeals ruled that he was entitled to credit for time served until the date of issuance of the revocation warrant, a 364-day period. State v. McNack, No. W2010-00471-CCA-R3-CD, 2010 WL 5343361, at *3 (Tenn. Crim. App. Dec. 21, 2010). Because different panels of the Court of Criminal Appeals have reached different results on the issue, this Court granted the State's application for permission to appeal in an effort to establish a bright-line rule as to the entitlement of sentence credits in a community corrections program.

**Standard of Review**

This appeal involves the interpretation of a statute. The construction of a statute is a question of law, which is reviewed de novo without any presumption of correctness. In re Estate of Tanner, 295 S.W.3d 610, 613 (Tenn. 2009); see also Carter v. Quality Outdoor Prods., Inc., 303 S.W.3d 265, 267 (Tenn. 2010) (citing Perrin v. Gaylord Entm't Co., 120

---

[1] While the record indicates that the trial judge signed the warrant on July 27, 2004, the warrant was stamped "received" by the court clerk a day later, on July 28, 2004.

S.W.3d 823, 826 (Tenn. 2003)).  When dealing with statutory interpretation, well-defined precepts apply.  Our primary objective is to carry out the legislative intent without broadening or restricting the statute beyond its intended scope.  Houghton v. Aramark Educ. Res., Inc., 90 S.W.3d 676, 678 (Tenn. 2002); State v. Williams, 623 S.W.2d 121, 124 (Tenn. Crim. App. 1981).  In construing legislative enactments, we presume that every word in a statute has meaning and purpose and should be given full effect if the obvious intention of the General Assembly is not violated by so doing.  In re C.K.G., 173 S.W.3d 714, 722 (Tenn. 2005).  When a statute is clear, we apply the plain meaning without complicating the task.  Eastman Chem. Co. v. Johnson, 151 S.W.3d 503, 507 (Tenn. 2004).  Our obligation is simply to enforce the written language.  Abels ex rel. Hunt v. Genie Indus., Inc., 202 S.W.3d 99, 102 (Tenn. 2006).  It is only when a statute is ambiguous that we may reference the broader statutory scheme, the history of the legislation, or other sources.  Parks v. Tenn. Mun. League Risk Mgmt. Pool, 974 S.W.2d 677, 679 (Tenn. 1998).  When the statutory language is silent as to the issue at hand, the "objective and spirit behind the legislation" may be determinative.  Lipscomb v. Doe, 32 S.W.3d 840, 845 (Tenn. 2000) (quoting Dorrier v. Dark, 537 S.W.2d 888, 892 (Tenn. 1976)).

## History of Community Corrections

During the 1st Extraordinary Session of the 1985 General Assembly, the legislature enacted the Community Corrections Act.  State v. Cummings, 868 S.W.2d 661, 667 (Tenn. Crim. App. 1992).  The stated purpose of the Act is to provide an alternative means of punishment for "selected, nonviolent felony offenders in front-end community based alternatives to incarceration," State v. Estep, 854 S.W.2d 124, 126 (Tenn. Crim. App. 1992) (quoting Tenn. Code Ann. § 40-36-103(1)), "thereby reserving secure confinement facilities for violent felony offenders."  State v. Griffith, 787 S.W.2d 340, 341 (Tenn. 1990).  Our legislature established statutory goals that, among other things, were designed to

> "[p]romote accountability of offenders to their local community . . ." "through the development of a range of sanctions and services available . . . ," to punish "offenders in noncustodial options . . . ," and to provide opportunities for offenders with special needs so as to enhance their ability to "provide for their families and become contributing members of their community."

Estep, 854 S.W.2d at 126 (quoting Tenn. Code Ann. § 40-36-104).  A further objective was to alleviate the overcrowded conditions in the state prison system.  State v. Smith, 735 S.W.2d 859, 865 (Tenn. Crim. App. 1987).  In summary, the Community Corrections Act offered a degree of flexibility in sentencing that provided defendants with an opportunity for rehabilitation and served legitimate societal purposes.  Estep, 854 S.W.2d at 127.

In Cummings, the Court of Criminal Appeals observed as follows:

Because of prison overcrowding, community corrections was a way to reserve secure confinement facilities for violent felony offenders. As part of the goals of the Community Corrections Act, the General Assembly established efficient community corrections programs; promoted accountability of offenders to their local community; filled gaps in the local correctional system through the development of a range of sanctions and services; [and] reduced the number of nonviolent felony offenders in correctional institutions and jail . . . .

Cummings, 868 S.W.2d at 667; see also State v. Wagner, 753 S.W.2d 145, 146 (Tenn. Crim. App. 1988).[2]

---

[2] At the time of sentencing, the Defendant, of course, qualified for a sentence under the Act. The eligibility criteria for the community corrections program is set out in Tennessee Code Annotated section 40-36-106 and provides as follows:

(a)(1) An offender who meets all of the following minimum criteria shall be considered eligible for punishment in the community under the provisions of this chapter:

(A) Persons who, without this option, would be incarcerated in a correctional institution;

(B) Persons who are convicted of property-related or drug-or alcohol-related felony offenses or other felony offenses not involving crimes against the person as provided in title 39, chapter 13, parts 1-5;

(C) Persons who are convicted of nonviolent felony offenses;

(D) Persons who are convicted of felony offenses in which the use or possession of a weapon was not involved;

(E) Persons who do not demonstrate a present or past pattern of behavior indicating violence; and

(F) Persons who do not demonstrate a pattern of committing violent offenses.

(2) Persons who are sentenced to incarceration or are on escape at the time of consideration will not be eligible for punishment in the community.

(b) Offenders shall not be excluded from the program on the basis of prior convictions for nonviolent felony offenses, but may, at the discretion of the court and local community corrections advisory board, be excluded on the basis of prior convictions for felony offenses that would not meet the eligibility criteria provided in subsection (a).

(c) Felony offenders not otherwise eligible under subsection (a), and who would be usually considered unfit for probation due to histories of chronic alcohol or drug abuse or mental

(continued...)

**Analysis**

Tennessee Code Annotated section 40-36-106(e)(3)(B) (2003) provides that "[f]ailure to comply with the terms of probation [of a community corrections sentence] subjects the offender to revocation proceedings," and if the proceedings lead to incarceration, the offender "receives credit only for actual time served in the community-based alternative program." Section 40-36-106(e)(4) authorizes the courts to "resentence the defendant . . . for any period of time up to the maximum sentence provided for the offense committed, less any time actually served in any community-based alternative to incarceration." Our courts have held that the language of the statute as to sentence credits is mandatory, not discretionary. See, e.g., State v. Broaden, No. W2001-03100-CCA-R3-CD, 2002 WL 31852862, at *2 (Tenn. Crim. App. Dec. 20, 2002) (explaining that the "granting of credit for time served is mandated by statute and is not discretionary"); State v. Lofton, No. 02C01-9611-CC-00427, 1997 WL 607487, at *2 (Tenn. Crim. App. Oct. 2, 1997) (holding that the "granting of the credit is statutorily mandated and is not discretionary").

Trial courts, upon a finding that the conditions of a community corrections sentence have been violated, must comply with the principles of the Criminal Sentencing Reform Act of 1989 when resentencing the defendant. Tenn. Code Ann. § 40-36-106(e)(4); see Carpenter v. State, 136 S.W.3d 608, 612 (Tenn. 2004). Unlike a revocation of probation proceeding, a new and longer sentence, so long as within the range prescribed by statute, is within the trial court's discretion. Carpenter, 136 S.W.3d at 612; State v. Samuels, 44 S.W.3d 489, 493 (Tenn. 2001). Furthermore, defendants in a community corrections

---

[2](...continued)
> health problems, but whose special needs are treatable and could be served best in the community rather than in a correctional institution, may be considered eligible for punishment in the community under the provisions of this chapter.
>
> (d) The eligibility criteria established in this section shall be interpreted as minimum state standards, guiding the determination of eligibility of offenders under this chapter.
>
> (e)(1) Notwithstanding any other provision of the law to the contrary, the court is authorized to sentence an eligible defendant as defined in this section to any appropriate community-based alternative to incarceration provided in accordance with the terms of this chapter, and under the additional terms and conditions as the court may prescribe, in lieu of incarceration in a state penal institution or local jail or workhouse.
>
> (2) In sentencing an eligible defendant to any community-based alternative to incarceration, the court shall possess the power to set the duration of the sentence for the offense committed at any period of time up to the maximum sentence within the appropriate sentence range and shall retain the authority to alter or amend at any time the length, terms or conditions of the sentence imposed.

program are entitled to credit "for time spent in community corrections prior to the revocation," whereas defendants violating the terms of probation are not entitled to any sentencing credits. Carpenter, 136 S.W.3d at 612.

The relevant statutes, however, do not define "actual time served" or "time actually served." The State submits that a failure on the part of the Defendant to adhere to the conditions of the community corrections program cannot constitute "time actually served," and, therefore, credit should not extend past the date of noncompliance. The Defendant, on the other hand, argues that for the "sake of uniformity" and to encourage close monitoring of community corrections program participants, the proper mechanism to stop the accumulation of credits for time served is the filing of a revocation petition.

The Court of Criminal Appeals has addressed the statutory scheme on several prior occasions. For example, in State v. Wakefield, No. W2003-00892-CCA-R3-CD, 2003 WL 22848965, at *1 (Tenn. Crim. App. Nov. 25, 2003), the court ruled that time served, in the context of Tennessee Code Annotated section 40-36-106(e)(4), "commences on the date a defendant is ordered to serve his sentence on community corrections, and ceases on the date a petition to revoke the sentence is filed." Even though Wakefield did not report to the community corrections program for several months, the Court of Criminal Appeals held that he should receive credit up until the filing date of the petition to revoke the community corrections sentence. Similarly, in State v. Lewis, No. W2001-03098-CCA-R3-CD, 2003 WL 261935, at *1 (Tenn. Crim. App. Feb. 4, 2003), the Court of Criminal Appeals ruled that a trial court does not have the authority to "deny credit for time actually served in the community corrections program, no matter how lackluster or unsuccessful the defendant's performance" and extended credit "for the full period [the defendant] was in community corrections until the filing of a revocation proceeding." See also Jackson v. Parker, No. W2010-01630-CCA-R3-HC, 2011 WL 1642620, at *4 (Tenn. Crim. App. Apr. 27, 2011) (giving credit up until the filing of a revocation warrant in an action seeking habeas corpus relief); Lofton, 1997 WL 607487, at *2 (giving credit through the filing of the revocation petition despite failing to meet the requirements of the community corrections program).

In contrast, there are some cases in which the Court of Criminal Appeals has denied credit for periods of time served despite delays in the filing and issuance of a warrant revoking the community corrections sentence. See State v. Gray, No. W2002-00460-CCA-R3-CD, 2002 WL 31322539, at *2 (Tenn. Crim. App. Oct. 14, 2002) (denying credit where the defendant never reported to or contacted the community corrections program); Turner v. State, No. 03C01-9902-CR-00088, 1999 WL 1081331, at *1 (Tenn. Crim. App. Dec. 1, 1999) (denying credit during the time the defendant was deemed to have "absconded" from supervision); see also State v. Moore, No. 01C01-9608-CC-00335, 1997 WL 602883, at *3 (Tenn. Crim. App. Sept. 30, 1997) (Woodall, J., concurring in part and dissenting in part)

(stating that "Tennessee Code Annotated section 40-36-106(e)(4) supports the proposition that [a defendant] is not entitled to credit for time periods in which he was in an 'absconded' status from the Community Corrections Program").

In State v. Shaffer, 45 S.W.3d 553 (Tenn. 2001), this Court considered the effect of the filing of a violation warrant in the context of probation revocation. See State v. Harkins, 811 S.W.2d 79, 83 (Tenn. 1991) (explaining that because of similarities between a sentence for probation and a sentence for community corrections, the same principles apply in examining a trial court's rulings regarding the two types of sentences). In Shaffer, this Court ruled that the "issuance of the warrant" began the tolling of the probationary period. Shaffer, 45 S.W.3d at 555 ("The interruption of the probationary period is triggered by the issuance of the probation revocation warrant . . . ."). Although a probationary sentence and a community corrections sentence have identifiable differences, as indicated, this ruling is helpful in our analysis.

A guiding principle is that when statutory language is silent on an issue, here the definition of "actual time served," the "objective and spirit behind the legislation" may be determinative. Lipscomb, 32 S.W.3d at 845 (quoting Dorrier, 537 S.W.2d at 892).[3] Among the goals enumerated in the Community Corrections Act is that offenders be closely monitored and held accountable to their local communities. Tenn. Code Ann. § 40-36-104(1)–(2). By the direct involvement of local officials, a community-based program is encouraged to offer services designed to address the specific needs of the participating offenders. Tenn. Code Ann. § 40-36-104(5), (6), (7). The legislative objectives clearly contemplate intensive supervision of the offenders as essential to a successful program.

That the filing of the revocation warrant should control is consistent with the terms of the Act. Tenn. Code Ann. § 40-36-106(e)(3)(B), (4). In our interpretation, whether a defendant has absconded, failed to report, or failed to comply with the program's requirements in some other manner, the onus is on the community corrections case officers, charged with the supervision of program participants, to file a petition for revocation. As observed by the Court of Criminal Appeals, requiring the supervising authority to file a warrant before credits cease promotes diligence in oversight of the program participants, requires timely compliance by the offenders with their conditions of release, and otherwise serves the societal interests that the community corrections program was designed to achieve. Estep, 854 S.W.2d at 126-27 (asserting that the purpose of community corrections is to "promote accountability . . . yet serve legitimate societal purposes") (citations omitted). A bright-line rule of this nature entrusts supervisors of the community corrections program with

---

[3] Our review of the history of the legislation, specifically whether there was any debate on the meaning of "actual time served," did not shed any light on the proper interpretation.

the authority to determine when credits for time served should appropriately end by simply filing a revocation petition.

## Conclusion

Because the filing of the revocation warrant begins the tolling of sentence credits in a community corrections program, we affirm the Court of Criminal Appeals and remand the case to the trial court to award credit for time served. Costs are adjudged against the State of Tennessee.

_____
GARY R. WADE, JUSTICE