# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT KNOXVILLE
### Assigned on Briefs February 19, 2015

## STATE OF TENNESSEE v. DENNIS KARR

**Appeal from the Circuit Court for Sevier County**
No. 13485-III        Rex Henry Ogle, Judge

_____

**No. E2014-01245-CCA-R3-CD – Filed April 7, 2015**
_____

The Defendant, Dennis Karr, appeals as of right from the Sevier County Circuit's revocation of his community corrections sentence[1] and order of incarceration of his five-year-sentence relative to his guilty-pleaded sale of methamphetamine conviction. The Defendant contends that the trial court abused its discretion in revoking his community corrections sentence based upon his failure to report, which, according to the Defendant, was due to necessity because he was a single father and homeless. He submits that, although he was an absconder from supervision as charged, he had, in his opinion, demonstrated an ability to comply with the conditions of his release by addressing his substance abuse problem, by not obtaining any new charges, and by returning to Tennessee to address this violation. Following our review, we affirm the trial court's revocation of the Defendant's community corrections sentence.

**Tenn. R. App. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed**

D. KELLY THOMAS, JR., J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR., and ROBERT H. MONTGOMERY, JR., JJ., joined.

Amber D. Haas, Sevierville, Tennesee, for the Appellant, Dennis Karr.

Herbert H. Slatery, III, Attorney General and Reporter; Ahmed A. Safeeullah, Assistant Attorney General; James B. ("Jimmy") Dunn, District Attorney General; and Timothy Norris, Assistant District Attorney General, for the Appellee, State of Tennessee.

## OPINION

_____

[1] Because the terms probation or probationary sentence are often used by the parties, we feel it important to clarify that the Defendant received a community corrections sentence.

## FACTUAL BACKGROUND

On May 26, 2004, the Defendant was charged with one count each of sale or delivery of methamphetamine in violation of Tennessee Code Annotated section 39-17-417. [2] The Defendant thereafter entered into a negotiated plea agreement on September 8, 2008, pleading guilty to the sale of methamphetamine in an amount less than 0.5 grams, a Class C felony, and the delivery count was dismissed. He received a five-year sentence in exchange for his plea, at thirty percent release eligibility, with the sentence to be served on community corrections after service of ninety days in jail. He was further ordered to pay a $2,000.00 fine and court costs, to perform 120 hours' community service, and to complete an alcohol and drug assessment.

A violation of community corrections warrant was filed on September 8, 2009, wherein it was alleged that the Defendant had failed to report. Several days later a violation of probation warrant was filed for this same guilty-pleaded conviction. This time it was alleged in the warrant that the Defendant violated the conditions of his probationary sentence in the following respects:

> Rules # 4, 5, 6, 7, 8, 9, 10: The Defendant has not reported to his [p]robation [o]fficer since March 10, 2009 making it impossible for his [p]robation [o]fficer to verify employment or residence. The Defendant is not in compliance with orders to make payment of [c]ourt cost[s] (owing $2882) and supervision fees (owing $315). The Defendant has not made himself available for search or for drug screening to verify compliance with prohibition from drug or alcohol use. The Defendant has not made progress toward obtaining an alcohol and drug assessment or completing any community service work as ordered. The Defendant's current whereabouts are unknown.

Both warrants were served on the Defendant on March 14, 2014.

An investigation report was prepared, and a revocation hearing was held. At the hearing, Dana McCullen, manager of the probation and parole office in Sevier County, testified that it was her "understanding" that the Defendant was placed on "state probation" following his September 8, 2008 guilty plea. The Defendant "reported monthly [to his probation officer] up until March of 2009 and then he ceased

---

[2] The guilty plea transcript is not included in the record on appeal. The only detail apparent from the record is that the drug transaction took place on November 20, 2003. We cannot discern any further details of the factual bases for these offenses.

reporting[,]" according to Ms. McCullen. She was not aware that the Defendant "was supposed to be on [c]ommunity [c]orrections" until the day of the revocation hearing. She confirmed that her office filed a probation violation warrant, along with a report, detailing the violations quoted above. Ms. McCullen agreed that the judgments assigned the Defendant to the Community Corrections Program.

Community Corrections District Supervisor Mark Sartin testified that he received the Defendant's judgments assigning him to the Community Corrections Program after service of ninety days' incarceration. Mr. Sartin agreed that, although the plea occurred months' earlier, the judgment forms were not signed by the trial court judge until March 25, 2009, and were filed the following day. According to Mr. Sartin, he did not have any contact information for the Defendant and was, therefore, never able to locate the Defendant. Mr. Sartin confirmed that the Defendant never reported to community corrections following his release from custody.

The Defendant testified on his behalf at the revocation hearing. According to the Defendant, he believed that community corrections and probation were "the same thing" and located at "the same place[.]" The Defendant apologized for absconding from supervision, explaining, "I left because I was homeless[;] and I was using drugs[;] and I was a father[;] and if I didn't leave[,] I would have probably ended up dead." He stated he went to Iowa because it "was the only place" that he "had a roof over [his] head to stay[.]" The Defendant asserted that he had completed one and one-half years of a rehabilitation program, and he had provided his counsel with verification of such. The Defendant further averred,

> I've completed [p]arenting [c]lasses. I've completed Fatherhood of Saving classes. I completed [m]inistry [c]lasses to become an [o]rdained [m]inister. I've been clean and sober for over four (4) years now[,] and I came back to Tennessee to try to get this stuff straightened out so I could be a positive role model for my son. I've been taking Darkness to Light Classes while I've been incarcerated to try and become a better person. And, you know, it's really . . . like I said right now . . . I'm a single fulltime father. You know, I have a 6[-]year[-]old son. His mom chose drugs over him. You know, I haven't used since then. And like I said, I'm trying . . . you know, I wanted to come back and get this straightened out and get back out on probation so I could get this behind me.

According to the Defendant, he had not picked up any new charges after he had been released, "not even a speeding ticket since this."

When asked if he turned himself in to the authorities, the Defendant explained that he was arrested "pulling out of [his] son's school trying to get him enrolled in school first." The Defendant stated that he had executed a power of attorney to a friend to care for his son and that he wanted to get his son enrolled in school before turning himself in.

The Defendant stated that he wished to again be granted an alternative sentence and affirmed that he "one hundred percent" could comply with any terms of that release. He was "beg[ging] for a second chance[.]"

In issuing its ruling, the trial court first noted that the Defendant had four prior violations of probation on his criminal record and a "fairly extensive record of thefts, unlawful possession of weapons, obstructing justice, [and] sale of drugs"; that the Defendant admittedly left the state; and that the Defendant was an absconder from supervision for a substantial period of time, over several years. The trial court then found that the Defendant had violated the terms of his community corrections sentence and revoked the Defendant's community corrections placement, ordering him to serve the remainder of his original five-year sentence in confinement. The court reasoned,

> I mean you basically walked off . . . no you didn't just basically[,] you left and then got things apparently right, but I mean, if I put my stamp of approval on this, on your actions[,] we might as well not put anybody on probation because it wouldn't make any difference whether you showed up or whether you didn't.

The trial court also dismissed the probation violation warrant because the Defendant "obviously wasn't on probation[,]" and granted the Defendant credit for previous time served.[3] The Defendant perfected a timely appeal.

## ANALYSIS

The Defendant contends that the trial court abused its discretion by revoking his community corrections sentence because he has "demonstrated an ability to comply with [an alternative sentence], and a willingness to do so[,]" evidenced "by addressing the underlying cause for the conviction, i.e.[,] a substance abuse problem, by not picking up any new charges, and by returning to Tennessee to address the probation violation[.]" He continues that the community corrections violation "was not due to a desire to circumvent the orders of the court, but was born out of necessity" because he was a single father and

---

[3] The Defendant is entitled to sentence credit from September 8, 2008, until September 8, 2009, the date the revocation warrant was filed. See State v. McNack, 356 S.W.3d 906, 912 (Tenn. 2011).

-4-

homeless. The Defendant prays that he be returned to the Community Corrections Program for service of the remainder of his sentence. The State responds that the trial court properly revoked the Defendant's community corrections sentence because the Defendant "admittedly failed to comply with this condition" of his release and, therefore, possessed the authority to order total incarceration.

The Tennessee Supreme Court has held that the same principles that apply in the revocation of probation also apply in the revocation of community corrections. State v. Harkins, 811 S.W.2d 79, 83 (Tenn. 1991). The revocation of community corrections, like the revocation of probation, rests within the sound discretion of the trial court. Id. An appellate court will uphold a trial court's decision to revoke probation or community corrections absent an abuse of discretion. State v. Beard, 189 S.W.3d 730, 735 (Tenn. Crim. App. 2005); State v. Webb, 130 S.W.3d 799, 842 (Tenn. Crim. App. 2003) (quoting Harkins, 811 S.W.2d at 82).

Pursuant to Tennessee Code Annotated section 40-35-311(e), the trial court is required only to find that the violation of a community corrections sentence occurred by a preponderance of the evidence. Once there is sufficient evidence to establish a violation of a community corrections sentence, the trial court has the authority to revoke the community corrections sentence. Tenn. Code Ann. § 40-36-106(e). The trial court may then "resentence the defendant to any appropriate sentencing alternative, including incarceration, for any period of time up to the maximum sentence provided for the offense committed, less any time actually served in any community-based alternative to incarceration." Tenn. Code Ann. § 40-36-106(e)(4).

The Community Corrections Program was created as an alternative to incarceration that provides flexibility and promotes accountability, while reducing the number of "nonviolent felony offenders" in the state prison system. Tenn. Code Ann. § 40-36-104; see also State v. Estep, 854 S.W.2d 124, 126-27 (Tenn. Crim. App. 1992) ("[T]he community corrections sentence provides a desired degree of flexibility that may be both beneficial to the defendant yet serve legitimate societal purposes."). While the program provides defendants with freedom that would otherwise be removed if the defendant had been incarcerated, there are specific remedies available to the trial court to ensure that those who fail to comply with the program are sufficiently penalized for their noncompliance. Tenn. Code Ann. § 40-36-106(e)(4).

The trial court needed only to find that a revocation of the Defendant's sentence was warranted by a preponderance of the evidence. Mr. Sartin stated that the Defendant never reported to community corrections following his release from custody. Ms. McCullen testified that the Defendant initially reported to state probation after his guilty

plea but that he eventually failed to report there as well. The Defendant admitted that he left the state but argued that he only did so out of necessity. The trial court considered this claim before deciding to revoke the Defendant's placement in the Community Corrections Program. There was sufficient evidence before the trial court to establish a violation of the conditions of the Defendant's community corrections sentence occurred.

The trial court further noted that this was the Defendant's fifth violation of a probationary sentence; that he had a "fairly extensive record of thefts, unlawful possession of weapons, obstructing justice, [and] sale of drugs"; and that the Defendant was an absconder from supervision for a substantial period of time, lasting from March 2009 until his arrest in March 2014. We conclude that the trial court, pursuant to its discretionary authority, properly revoked the Defendant's community corrections sentence and ordered him to serve the balance of his sentence in confinement. See Tenn. Code Ann. § 40-36-106(e)(4). He is not entitled to relief.

CONCLUSION

In sum, we conclude that the trial court did not abuse its discretion by revoking the Defendant's community corrections sentence and by ordering him to serve the balance of his original sentence in confinement. Accordingly, we affirm the judgments of the trial court.

_____
D. KELLY THOMAS, JR., JUDGE

-6-