IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON

Assigned on Briefs December 7, 2021

**STATE OF TENNESSEE v. JEREMIAH WARREN**

**Appeal from the Criminal Court for Shelby County
Nos. 10-06875, 10-11570    Jennifer Johnson Mitchell, Judge**

_____

**No. W2021-00236-CCA-R3-CD**

_____

The Defendant, Jeremiah Warren, appeals from the Shelby County Criminal Court's revocation of his fifteen-year community corrections sentence for his arson conviction. *See* T.C.A. § 39-14-301 (2018) (arson). On appeal, he contends that the trial court erred in revoking community corrections and ordering him to serve his sentence. We affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ROBERT H. MONTGOMERY, JR., J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR., and TIMOTHY L. EASTER, JJ., joined.

Phyllis L. Aluko, District Public Defender; Barry W. Kuhn (on appeal) and Brent Walker (at hearing), Assistant District Public Defenders, for the appellant, Jeremiah Warren.

Herbert H. Slatery III, Attorney General and Reporter; Brent C. Cherry, Senior Assistant Attorney General; Amy P. Weirich, District Attorney General; Paige Munn, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

The record contains little information about the facts of the Defendant's crime. However, the indictment reflects that the Defendant was charged with aggravated arson, and the judgment reflects that on June 22, 2011, he pleaded guilty to arson and received a fifteen-year community corrections sentence. The judgment also notes that the Defendant agreed to "plead outside of range" and was sentenced as a Range III, persistent offender.

On August 8, 2018, a revocation warrant was filed, which alleged that the Defendant violated the terms of his community corrections sentence by failing to report; using intoxicants; not cooperating with a home or employment site visit; and failing to attend

alcohol, drug, or psychological evaluations or treatment. The warrant also stated that a previous revocation warrant had been adjudicated in 2015 and "was dismissed." The warrant stated, as well, that a second revocation warrant was adjudicated in January 2018 and that "the Petition was dismissed and an Amended Sentencing Order was entered into the record." The warrant specified, relevant to the present violation allegations, that the Defendant tested positive for marijuana and cocaine on April 30, 2018, and that he admitted he had used cocaine, marijuana, and alcohol. The warrant stated that the January 2018 Amended Sentencing Order had provided for inpatient treatment, which the Defendant successfully completed, and that the Defendant was later discharged from an intensive outpatient treatment for failure to report. The warrant stated that the Defendant "missed a Home Visit on May 27, 2018" and that he last reported to the supervision office on May 7, 2018, and was categorized as an absconder. Documentation of the Defendant's acknowledgement of alcohol and drug use, the drug test results, and a letter to the Defendant regarding his discharge from outpatient treatment were attached to the warrant.

At the February 1, 2021 revocation hearing, Correctional Alternatives Incorporated employee Meredith Muizers testified that, pursuant to the January 26, 2018 Amended Sentencing Order, the Defendant was to attend twenty-eight days of inpatient treatment and twenty-five days of residential treatment. She said he completed these requirements and was ordered to complete an additional ninety days of outpatient treatment but that he was discharged from the outpatient program in June 2018 for failing to report. She said he had not been seen by employees of her office since May 18, 2018, and that he "missed" a home visit on May 27.

Ms. Muizers testified that the Defendant's past history on community corrections included his "doing well, then he starts using drugs, and then he's gone." She said he had been under community corrections supervision for almost ten years and that "we've done this several times." She said the Defendant's history showed that he did well when he took his prescription medication but that he repeatedly discontinued the medications and resumed using illegal drugs. She did not think the Defendant would be successful if returned to community corrections.

Ms. Muizers testified that the Defendant was under the care of Southeast Mental Health and that he had been diagnosed with schizophrenia, paranoid type; and polysubstance dependence. She said he received Social Security disability payments.

The Defendant testified that he stopped attending outpatient treatment due to lack of transportation. He said that his mother had provided his transportation but that she stopped when he moved out of her house "because of problems . . . at [the] house." He said he "[s]ometimes" tried to obtain transportation to check in with this community

corrections officer. The Defendant said that, in 2018, he "relapsed" and contacted Lance Brasher, his community corrections officer. The Defendant said, "[I asked] can I come check in because I had relapsed," and that Mr. Brasher responded, "[N]o, I need you to come in today[.]" The Defendant said he had thought that he might be able to "depend on" Mr. Brasher to help him "try to clean [himself] up." The Defendant explained that he wanted to "detox" in order to avoid a positive drug screen but that Mr. Brasher insisted the Defendant had to report that day.

The Defendant testified that he had been diagnosed with paranoid schizophrenia. He said that if he were returned to community corrections, he would live in a setting that was "something like a[n] independent living." He said, "[T]he people that I rent from, they make sure we are on our medication and I'll be staying by myself." He said he would be employed by his landlord in an appliance shop. He said that he would use the money he earned for transportation to check in with his community corrections officer, that his mother would not provide transportation, and that his mother no longer spoke to him. He acknowledged that he could take a bus to check in with his community corrections officer.

The Defendant testified that he had a communications breakdown with Mr. Brasher and that he had been scared of having a positive drug test. He said that he had issues with his outpatient treatment due to transportation, which was sometimes late, and that the instructor told the patients they "might as well . . . stay home" if they were going to arrive late.

The Defendant testified that he had not been using drugs "this whole time . . . [s]ince 2018." He said that he had been taking his prescription medications and that he had not been using illegal drugs. He said he had not incurred any criminal charges. He said he had been in custody for about four months. He said he wanted to try to obtain a bank loan in order to start a clothing business or to record music. The Defendant asked the trial court to "have a kind heart" and return him to community corrections. He said he was willing to take a drug test. He said that he was sorry for failing to report for two years and that he did not want to spend the rest of his life in jail.

The Defendant agreed that the present violation was his fourth and that he had been on community corrections for ten years. He agreed that his arson conviction was related to his "not getting a check on time" and "set[ting] a mattress on fire inside a house." He agreed that he had completed drug and mental health treatment after previous violations.

Defense counsel asked the trial court to take the matter under advisement in order for counsel to investigate the possibility of additional treatment options for the Defendant.

-3-

The trial court found that the Defendant had been provided mental health and drug treatment repeatedly, yet he had continued to violate the terms of his community corrections sentence. The court found that the State had proven the allegations contained in the violation warrant. It revoked community corrections and ordered the Defendant to serve his sentence. This appeal followed.

The Defendant contends that the trial court abused its discretion in revoking his community corrections sentence. He argues that his needs would be better served by allowing him to remain on community corrections, where he could receive mental health and substance abuse treatment. He argues that he is unlikely to receive appropriate treatment in the Department of Correction.

A trial court may revoke a defendant's probation upon its finding by a preponderance of the evidence that the defendant violated a condition of the sentence. T.C.A. § 40-35-311(e) (2019) (prescribing the procedure for probation revocation proceedings). Given the similar nature of a sentence of community corrections and a sentence of probation, the same principles are applicable in deciding whether the revocation of a community corrections sentence is proper. *State v. Harkins*, 811 S.W.2d 79, 83 (Tenn. 1991). Our supreme court has concluded that a trial court's decision to revoke a defendant's community corrections sentence "will not be disturbed on appeal unless . . . there has been an abuse of discretion." *Id.* at 82 (citing *State v. Williamson*, 619 S.W.2d 145, 146 (Tenn. Crim. App. 1981)). An abuse of discretion has been established when the "record contains no substantial evidence to support the conclusion of the trial judge that a violation of the conditions of probation has occurred." *State v. Delp*, 614 S.W.2d 395, 398 (Tenn. Crim. App. 1980); *see State v. Shaffer*, 45 S.W.3d 553, 554 (Tenn. 2001); *State v. Grear*, 568 S.W.2d 285, 286 (Tenn. 1978). A finding of abuse of discretion "'reflects that the trial court's logic and reasoning was improper when viewed in light of the factual circumstances and relevant legal principles involved in a particular case.'" *Shaffer*, 45 S.W.3d at 555 (quoting *State v. Moore*, 6 S.W.3d 235, 242 (Tenn. 1999)).

When a trial court finds by a preponderance of the evidence that a defendant has violated the conditions of probation, the court "shall have the right . . . to revoke the probation." T.C.A. § 40-35-311(e)(1) (2019). "In probation revocation hearings, the credibility of witnesses is for the determination of the trial judge." *Carver v. State*, 570 S.W.2d 872, 875 (Tenn. Crim. App. 1978) (citing *Bledsoe v. State*, 387 S.W.2d 811, 814 (Tenn. 1965)). When a defendant's community corrections sentence is revoked, the court "may resentence the defendant to any appropriate sentencing alternative, including incarceration, for any period of time up to the maximum sentence provided for the offense committed, less any time actually served in any community-based alternative to incarceration." T.C.A. § 40-36-106(e)(4) (2019).

In ordering the Defendant to serve the remainder of his sentence in confinement, the trial court considered that the Defendant had received prior reprieves from violations of the terms of community corrections. Although the Defendant claimed he had been living productively and had not been using drugs in the two years since he stopped reporting to his community corrections officer, the court saw little prospect of his long-term success in view of his repeated failures to comply with the terms of his community corrections sentence. Upon review, we conclude that the record supports the court's factual determinations and that the court did not abuse its discretion in revoking the Defendant's community corrections sentence and ordering him to serve the remainder of his sentence in confinement.[1] *See* T.C.A. §§ 40-35-308(a), (c); -310; -311(e)(1). The Defendant is not entitled to relief on this basis.

In consideration of the foregoing and the record as a whole, the judgment of the trial court is affirmed.

_____
ROBERT H. MONTGOMERY, JR., JUDGE

---

[1] Although the trial court's order did not specifically state that the Defendant was entitled to credit for time served in the community corrections program before the issuance of the revocation warrant, the statute confers such credit on all defendants for community corrections service. *See* T.C.A. § 40-36-106(e)(4); *State v. McNack*, 356 S.W.3d 906, 910-11 (Tenn. 2011) (stating that the credit is statutorily mandated and is not discretionary with the trial court). The record reflects that the Defendant was placed on community corrections on June 22, 2011, and that the present revocation warrant was issued on August 9, 2018. The record also reflects that other revocation proceedings occurred during the period between these dates. We are unable to determine from the record how much sentence credit the Defendant was entitled to receive for the dates he served in the community corrections program.