IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs April 8, 2025

## STATE OF TENNESSEE v. NICHOLAS CORNELIUS CONNER

**Appeal from the Circuit Court for Lincoln County**
**No. 18-CR-134      Forest A. Durard, Jr., Judge**

———————————————————————

### No. M2024-00778-CCA-R3-CD

———————————————————————

Defendant, Nicholas Cornelius Conner, pled guilty to one count of the sale of 0.5 grams or more of cocaine, a Schedule II drug. He received a nine-year community corrections sentence which was later transferred to probation. Thereafter, Defendant was arrested for new drug offenses. After a hearing, the trial court revoked Defendant's probation and ordered him to serve his original sentence incarcerated. Defendant appeals, arguing that the trial court abused its discretion by fully revoking his probation and by denying credit for time he successfully served on probation. Upon review of the record, the briefs of the parties, and the applicable law, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

JILL BARTEE AYERS, J., delivered the opinion of the court, in which ROBERT H. MONTGOMERY, JR., and JOHN W. CAMPBELL, SR., JJ., joined.

Brennan M. Wingerter, Assistant Public Defender – Appellate Director, Franklin, Tennessee (on appeal), and Jefre Goldtrap, Assistant Public Defender, Fayetteville, Tennessee (at revocation hearing), for the appellant, Nicholas Cornelius Conner.

Jonathan Skrmetti, Attorney General and Reporter; William C. Lundy, Assistant Attorney General; Robert J. Carter, District Attorney General; and Matt Goney, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

### Factual and Procedural Background

On March 19, 2019, Defendant pled guilty to one count of the sale of 0.5 grams or more of cocaine, a Schedule II drug, and received a nine-year community corrections sentence. Defendant's supervision was transferred to probation on May 5, 2020; it is

unclear from the record why he was transferred.[1]  On March 1, 2024, a probation violation report was filed based on Defendant's arrest for various drug-related charges.

At the May 7, 2024 probation violation hearing, Tennessee Bureau of Investigation Agent Nathan Massey testified that he executed a "[n]arcotics search warrant" at Defendant's apartment on February 26, 2024.  During the execution of the search warrant, Agent Massey encountered Defendant in the kitchen holding approximately $1,700 in cash.  In a cabinet drawer behind the area where Defendant was standing, officers located a lockbox.  They located the key to the lockbox on a lanyard that also held Defendant's car keys.  The lockbox was opened and contained approximately nineteen grams of cocaine, less than one gram of crack cocaine, and "several sets of digital scales."  There was a safe located inside the only bedroom in the apartment.  The key to the safe was also on the lanyard.  The safe contained approximately three ounces of marijuana divided among three bags.  Based on the evidence seized during the search, Agent Massey filed warrants charging  Defendant with possession of a Schedule II drug with intent to sell or deliver and possession of a schedule VI drug with intent to sell or deliver.  On cross-examination, Agent Massey affirmed that Defendant's apartment had been under surveillance for approximately two months, and Agent Massey had coordinated controlled buys with a confidential informant prior to execution of the search warrant.  Agent Massey confirmed that funds used during the controlled buys were seized during the search.

Kellie Auger, Defendant's probation officer, filed the instant probation violation report based on Defendant's new charges.  Ms. Auger testified that Defendant had violated rule one, that he would abide by federal, state, and local laws, and rule eight, that he would not use or possess illegal drugs.

The trial court found by a preponderance of the evidence that Defendant had violated his probation and requested further proof on what the consequence of the violation should be, noting that there was not adequate proof in the adjudication phase for the court to "make a call on the disposition.  This was [Defendant's] first violation[,] but it was a big one."

Ms. Auger then testified that Defendant had missed only a few appointments and had attended the rescheduled appointments after he had missed.  Defendant had passed his drug screens and maintained employment until just before the probation violation was filed.  Ms. Auger identified certified copies of Defendant's 2002 conviction for domestic assault and two convictions for criminal trespass, 2004 domestic assault conviction, and 2005

---

[1] At the State's request, the trial court took judicial notice of the technical record in this case.  The appellate record does not contain the trial court's order transferring Defendant to probation or any documentation regarding Defendant's probation except the current violation.

driving with a suspended license conviction, as well as probation violation warrants and orders from 2002 and 2004.

On cross-examination, Ms. Auger acknowledged that the probation violations were from prior cases and that Defendant had not previously violated his probation in this case. Ms. Auger was unaware of any violations in the short time Defendant had been supervised by community corrections. She explained that people transferred from community corrections to probation "for various reasons prior to" community corrections losing funding at the end of 2022 and denied that Defendant transferred from community corrections to probation due to funding problems.

Agent Massey testified that as part of his investigation, he learned that Defendant had been convicted in 2009 for a federal drug offense for which he served five years incarcerated and another four years on probation. Upon questioning by the court, Agent Massey explained that Defendant was "a higher tier target" because he was a seller of drugs but not a user of drugs, as indicated by Defendant's passing his drug screens.

At the conclusion of the proof, the trial court found that Defendant was "no longer suitable for any alternative sentencing" and revoked his probation in full. The trial court noted that Defendant had violated probation in prior cases, which reflected "poorly" on continued probation despite the "age" of the probation violations. It further noted that Defendant's federal incarceration and probation explained the "long period of time where there is no activity in this case."

The trial court stated that Defendant would receive credit for the time he was supervised by community corrections but declined to exercise its discretion to award credit for the time Defendant spent on probation. Noting that "every time [Defendant] is out of not being incarcerated[,] he seems to go right back to what he knows and that's the distribution of narcotics. . . . [Defendant] is a drug dealer, that is just what it amounts to."

The trial court entered a written order the same day which reflected that Defendant received credit for March 19, 2019, through May 5, 2020, while on community corrections, and jail credit from February 26, 2024, through May 7, 2024.

Defendant's timely appeal is now before this court.

**Analysis**

I. <u>Revocation of Probation</u>

Defendant argues that the trial court erred by fully revoking his probation and ordering his original sentence into execution. The State asserts that the trial court properly exercised its discretion in fully revoking Defendant's probation. We agree with the State.

We review the trial court's decision to revoke probation for abuse of discretion with a presumption of reasonableness "so long as the trial court places sufficient findings and the reasons for its decisions as to the revocation and the consequence on the record." *State v. Dagnan*, 641 S.W.3d 751, 759 (Tenn. 2022). Discretion is abused in a probation revocation case only if the record "contains no substantial evidence to support the conclusion of the trial judge that a violation of the conditions of probation has occurred." *State v. Farrar*, 355 S.W.3d 582, 586 (Tenn. Crim. App. 2011) (quoting *State v. Harkins*, 811 S.W.2d 79, 82 (Tenn. 1991)); *see State v. Delp*, 614 S.W.2d 395, 398 (Tenn. Crim. App. 1980). Because the trial court placed sufficient findings on the record to support its decision regarding the violation and consequence determination, we review its decision for an abuse of discretion.

A trial court must engage in a "two-step consideration" when determining whether to revoke a defendant's probation. As explained by the Tennessee Supreme Court "[t]he first [step] is to determine whether to revoke probation, and the second is to determine the appropriate consequence upon revocation." *Dagnan*, 641 S.W.3d at 757. A trial judge may revoke a defendant's probation upon a finding by the preponderance of the evidence that a defendant has violated the conditions of his or her probation. *See* T.C.A. § 40-35-311(d)(1); *State v. Shaffer*, 45 S.W.3d 553, 554 (Tenn. 2001); *see also Harkins*, 811 S.W.2d at 82.

As to the first *Dagnan* prong, Defendant does not challenge the trial court's finding that he violated probation by acquiring new criminal charges. Thus, we move directly to the second *Dagnan* prong, whether the trial court made sufficient findings to support its decision to order Defendant to serve the balance of his sentence in confinement. After deciding to revoke a defendant's probation, a trial court may:

> (1) order incarceration for some period of time; (2) cause execution of the sentence as it was originally entered; (3) extend the defendant's probationary period not exceeding one year; (4) return the defendant to probation on appropriate modified conditions; or (5) resentence the defendant for [the] remainder of the unexpired term to a sentence of probation. *See* T.C.A. §§ 40-35-308(c)(1), (2); -310; - 311(e)(1), (2) (2021).

*State v. Williams*, 673 S.W.3d 255, 259 (Tenn. Crim. App. 2023) (citation omitted).

This court has previously stated that "the consequence determination essentially examines whether the beneficial aspects of probation are being served and whether the defendant is amenable to continued probation." *State v. Robinson*, No. M2022-00248-CCA-R3-CD, 2022 WL 17335656, at *4 (Tenn. Crim. App. Nov. 30, 2022), *perm. app. denied* (Tenn. Feb. 8, 2023). Relevant factors for a trial court to consider include "the number of revocations, the seriousness of the violation, the defendant's criminal history, and the defendant's character." *Dagnan*, 641 S.W.3d at 759 n.5. Additionally, a trial court may consider "whether the violation shows that the defendant is a danger to the community or individuals in it." *State v. Penny*, No. W2023-00912-CCA-R3-CD, 2024 WL 1803264, at *3 (Tenn. Crim. App. Apr. 25, 2024) (citing T.C.A. § 40-28-302(1)), *perm. app. denied* (Tenn. Oct. 25, 2024). Further, "[a]n accused, already on probation, is not entitled to a second grant of probation or another form of alternative sentencing." *State v. Jones*, No. E2023-00155-CCA-R3-CD, 2023 WL 6389810, at *3 (Tenn. Crim. App. Sept. 29, 2023) (citation omitted); *see* T.C.A. § 40-35-311(e)(2).

Defendant argues that the trial court abused its discretion in ordering him to serve his sentence incarcerated because he had been an "exemplary probationer." He specifically notes that he reported as directed, rescheduled any missed meetings, passed his drug tests, maintained employment for most of his probationary period, and his prior probation violations in other cases were approximately "two decades old."

Here, the trial court revoked Defendant's probation after considering Defendant's criminal history, probation violations in prior cases, which it acknowledged had "some age on them," and the circumstances of the current violation. Specifically, the trial court noted that Defendant's new drug offenses occurred "right hard on the heels" of the expiration of the sentence for his federal drug conviction and stated that "every time [Defendant] is out of not being incarcerated[,] he seems to go right back to what he knows and that's the distribution of narcotics." It further found that Defendant did not sell drugs to support his own personal habit, which Agent Massey testified made Defendant a "higher tier target."

As Defendant notes, Ms. Auger testified that she was unaware of any violations by Defendant while he was under community corrections supervision, which the record showed was approximately one year, and Defendant was compliant with his probation for nearly four additional years. However, such compliance was expected and required. *See State v. Barber*, No. M2024-00955-CCA-R3-CD, 2025 WL 884068, at *3 (Tenn. Crim. App. Mar. 21, 2025), *no perm. app. yet filed*. The trial court acted within its discretionary authority in ordering Defendant's original sentence into execution. Defendant is not entitled to relief.

## II. Denial of Credit for Time Served on Probation

Defendant argues that the trial court erred by declining to award credit for the time he successfully spent on probation from May 5, 2020, through February 26, 2024. He asserts that this court should review the issue de novo because the trial court failed to place sufficient findings on the record. The State asserts that the trial court placed sufficient findings on the record, and it did not abuse its discretion by declining to credit for the time Defendant served on probation. We agree with the State.

After revoking a probationary sentence, a trial court may "cause the defendant to commence the execution of the judgment as originally entered, which may be reduced by an amount of time not to exceed the amount of time the defendant has successfully served on probation and suspension of sentence prior to the violation." T.C.A. §§ 40-35-311(e)(2), - 310(a). Whether to grant a defendant credit for time spent on probation is left to the sound discretion of the trial court. *State v. Carter*, No. M2023-00187-CCA-R3-CD, 2024 WL 4002781, at *5 (Tenn. Crim. App. Aug. 30, 2024). An abuse of discretion occurs when a trial court "applies an incorrect legal standard, reaches an illogical conclusion, bases its decision on a clearly erroneous assessment of the evidence, or employs reasoning that causes an injustice to the complaining party." *Williams*, 673 S.W.3d at 259 (quoting *State v. Davis*, 466 S.W.3d 49, 61 (Tenn. 2015)).

When determining whether to award credit for time spent on probation, a trial court should consider "the number of revocations, the seriousness of the violation, the defendant's criminal history, and the defendant's character." *Id.* (quoting *Dagnan*, 641 S.W.3d at 759 n.5). A trial court's findings need not "be particularly lengthy or detailed but only sufficient for the appellate court to conduct a meaningful review of the revocation decision." *Dagnan*, 641 S.W.3d at 759.

First, Defendant asserts that this court should review this issue de novo because the trial court failed to place sufficient findings on the record to support its decision. We disagree. In denying Defendant's request for credit for the time he served on probation, the trial court discussed Defendant's lengthy criminal history and agreed with defense counsel that some of the convictions "[did] have some age on them." However, it considered that Defendant violated his probation in some of those cases, reflecting poorly on continued probation. The court also considered Defendant's federal conviction for conspiracy to deliver or distribute narcotics and controlled substances and noted the amount of cocaine Defendant possessed for resale in this case. Further considering the seriousness of the violation, the trial court noted that Defendant had not failed drug screens, indicating that he was "either good with covering up his use of drugs or he does not use drugs, he just sells them." The trial court went on to find that the only time Defendant was not engaged in trafficking drugs was while he was in the federal penitentiary. Because the

court found Defendant to be a "drug dealer," it declined to give him credit for the time Defendant was on probation. The trial court's findings are sufficient for meaningful appellate review, and upon review, we determine the trial court did not abuse its discretion in declining to award credit for the time Defendant served on probation.

Defendant further asserts that had he not been transferred from the community corrections program, which occurred through no fault of his own, the additional credit for the time he served on probation would be statutorily required. As this court has noted many times, credit for time spent on community corrections is mandatory, but credit for time spent on probation is discretionary. *See State v. McNack*, 356 S.W.3d 906, 910 (Tenn. 2011) ("Our courts have held that the language of the [community corrections] statute as to sentence credits is mandatory, not discretionary."); *State v. Hardin*, No. M2023-01551-CCA-R3-CD, 2024 WL 4263466, at * (Tenn. Crim. App. Sept. 23, 2024) (noting that Tennessee Code Annotated section 40-35-310(a) gives a trial court discretion to award or deny credit for time served on probation), *perm. app. denied* (Tenn. Feb. 20, 2025); *see* T.C.A. § 40-36-106(e)(4). Part of the reasoning for this distinction is because a "defendant sentenced to the community corrections program is actually serving his sentence while in the program in lieu of incarceration, while service of the sentence is suspended for a defendant placed on probation." *Jones v. Cook*, No. E2015-01371-CCA-R3-HC, 2016 WL 2605985, at *2 (Tenn. Crim. App. May 4, 2016). Additionally, this court has noted that the community corrections program offers more intensive supervision than probation and "often punishes participating offenders more seriously than offenders who are sentenced to confinement." *State v Byrd*, 861 S.W.2d 377, 381 (Tenn. Crim. App. 1993).

While Defendant claims that his transfer from community corrections was involuntary, the record does not contain any information regarding how or why the transfer occurred. Regardless of the circumstances that led to Defendant's transfer to probation on May 5, 2020, the transfer does not entitle him to mandatory credit for the time he served on probation. While under the less-intensive supervision, Defendant continued a history of selling narcotics and controlled substances. The trial court specifically found based on Defendant's behavior while on probation and his criminal history, that Defendant was a drug dealer and that "it [was] kind of disingenuous to say that he has not always engaged in the trafficking of drugs. He was not engaged in trafficking for a while because he was in the [f]ederal penitentiary." The record supports the trial court's decision declining to award credit for the time Defendant served on probation; it did not abuse its discretion. Defendant is not entitled to relief.

## CONCLUSION

For the foregoing reasons, the judgment of the trial court is affirmed.

s/ *Jill Bartee Ayers*

JILL BARTEE AYERS, JUDGE