STATE of Tennessee, Appellee,

v.

Marvin O. ESTEP, Appellant.

Court of Criminal Appeals of Tennessee,
at Knoxville.

Dec. 17, 1992.

Permission to Appeal Denied
March 22, 1993.

J. Lewis Combs, Jr., Elizabethton, for appellant.

Charles W. Burson, Atty. Gen. and Reporter, Jeannie Kaess, Asst. Atty. Gen., Nashville, Kenneth Baldwin, Asst. Dist. Atty. Gen., First Judicial Dist., Elizabethton, for State of Tennessee.

## OPINION

WADE, Judge.

The defendant, Marvin O. Estep, was convicted of theft of over $500.00 and sentenced to two years. He was ordered to serve 120 days in jail with five years of supervision by the Community Corrections program.

In this appeal, the defendant, believing that probation and Community Corrections may be more onerous than confinement in the penitentiary, asks this court to reverse the grant of probation and order the execution of the two-year sentence. We decline the invitation. The judgment of the trial court is affirmed.

The plea agreement provided that in return for his plea of guilt to theft, the defendant would be sentenced to a term of two years; although the defendant was on probation at the time of the offense due to his conviction as a habitual motor vehicle offender, the state agreed not to initiate revocation proceedings. Initially, the defendant sought probation for the theft conviction, then announced his withdrawal of the application and stated his intention to seek work release only. The trial court determined that the defendant could be put on Community Corrections "whether he wants to be or not." The defendant, after being ordered to serve 120 consecutive days before being eligible for release under the Community Corrections program, contended that "[a] man doesn't have to take probation if he doesn't want it."

The defendant insists that he is entitled to reject probation and opt to serve his sentence in the state penitentiary. He acknowledges that he has an alcohol problem, believes he is unlikely to meet the conditions of his Community Corrections sentence, and reasons that the ultimate result will be a revocation and the service of even more than the two years imposed.

The defendant cites as authority *State v. Randolph*, 316 N.W.2d 508, 510 (Minn. 1982), wherein the Minnesota Supreme Court observed that "there is merit to the argument that if the conditions of probation make probation more onerous than prison and if it cannot be demonstrated that society's interests suffer by vacating the probation sentence, the defendant should be allowed to refuse probation and demand execution of sentence." In *Persall v. State*, 31 Ala.App. 309, 16 So.2d 332 (1944), the Alabama Court of Appeals referred to probation as "an act of grace" and observed as follows:

> [P]robation is subject to rejection or acceptance by the convict. He has an unfettered election in that regard, and the court order is not effective or operative until it has been accepted by him. If he prefers to serve out his sentence, as originally imposed upon him, to a suspension of it by subjecting himself to the conditions nominated in the probation, he has the clear right to do so. But if he elects to accept the probation and avails himself of the liberty it confers, he must do so upon the conditions upon which alone it is granted to him.

*Id.* 16 So.2d at 335.

The defendant asserts alternative grounds for relief; he cites two unreported

cases [1] from our court implying that it is mandatory for the defendant to make a written application for Community Corrections. Since he made no such request, the defendant maintains the trial court had no authority to order him into the program.

Our review requires an analysis of (1) the evidence, if any, received at the trial and sentencing hearing; (2) the presentence report; (3) the principles of sentencing and the arguments of counsel relative to sentencing alternatives; (4) the nature and characteristics of the offense; (5) any mitigating or enhancing factors; (6) any statements made by the defendant in his own behalf; and (7) the defendant's potential for rehabilitation or treatment. Tenn. Code Ann. §§ 40-35-102, -103, and -210. *State v. Smith*, 735 S.W.2d 859, 863 (Tenn. Crim.App.1987).

Among the factors applicable to the defendant's application for probation are the circumstances of the offense, the defendant's criminal record, social history, and present condition, and the deterrent effect upon and best interest of the defendant and the public. *State v. Grear*, 568 S.W.2d 285, 286 (Tenn.1978). We note that the Criminal Sentencing Reform Act of 1989 specifically provides that "probation shall be automatically considered by the court":

> (a) A defendant shall be eligible for probation under the provisions of this chapter if the sentence actually imposed upon such defendant is eight (8) years or less;
> . . .
> (b) A court shall have authority to impose probation as part of its sentencing determination at the conclusion of the sentencing hearing. There shall be no "petition for probation" filed by the defendant, and probation shall be automatically considered by the court as a sentencing alternative for eligible defendants; . . .

Tenn.Code Ann. § 40-35-303.

Especially mitigated or standard offenders convicted of Class C, D or E felonies are presumed to be favorable candidates "for alternative sentencing options in the absence of evidence to the contrary." Tenn.Code Ann. § 40-35-102(6). With certain statutory exceptions, none of which apply here, probation must be automatically considered by the trial court when the sentence imposed is eight years or less. Tenn.Code Ann. § 40-35-303(a).

Obviously, no petition for probation is necessary. And, while a written application for admission to a Community Corrections program may be preferable, we think trial courts are empowered to order placement for otherwise eligible offenders absent a written request. Stated simply, the 1985 Act contains no provision calling for a written petition by either the state or the defendant. Tenn.Code Ann. § 40-36-101 to -106. Notwithstanding some of the language appearing in the unpublished opinions of *Lee* and *Sullivan*, relied upon by the defendant as a bar to a Community Corrections sentence, our more recent opinion in *State of Tennessee v. Patrick J. Kennedy and Paul D. Grammer*, No. 01-C-019108CC00222, 1992 WL 95611 (Tenn. Crim.App., Nashville, May 11, 1992), holds otherwise. *Cf. State v. Fletcher*, 805 S.W.2d 785, 786 (Tenn.Crim.App.1991).

The purpose of the Community Corrections Act of 1985 was to provide an alternative means of punishment for "selected, nonviolent felony offenders in front-end community based alternatives to incarceration, . . ." Tenn.Code Ann. § 40-36-103(1). The legislature has established statutory goals which, among other things, are designed to "[p]romote accountability of offenders to their local community . . ." "through the development of a range of sanctions and services available . . .," to punish "offenders in noncustodial options . . .," and to provide opportunities for offenders with special needs so as to enhance their ability to "provide for their families and become contributing members of their community." Tenn.Code Ann. § 40-36-

---

1. *State v. Greg Lee*, No. 225, 1991 WL 4475 (Tenn.Crim.App., Knoxville, January 22, 1991); *State v. Chris Sullivan*, No. 01-C- 019106CR00166, 1992 WL 70550 (Tenn.Crim. App., Nashville, April 9, 1992).

104. Most importantly, the legislative design is to alleviate the overcrowded conditions in the state prison system.[2] *Smith*, 735 S.W.2d at 865. In summary, the Community Corrections sentence provides a desired degree of flexibility that may be both beneficial to the defendant yet serve legitimate societal purposes. *State v. Griffith*, 787 S.W.2d 340, 342 (Tenn.1990).

■ It is our view that trial courts have the authority to place defendants into a Community Corrections program whether there is a written application or not. This is especially so when, as here, the trial court is in possession of all information that might otherwise be contained in a formal request. We interpret the unpublished opinions cited by defendant as merely directory, not mandatory, and not a prohibition against a Community Corrections sentence.

The defendant, age 35 at the time of the sentencing, is married, has five children, and is gainfully employed. The record establishes that he has a severe drinking problem. At the time of this offense, he was on probation as a habitual motor vehicle offender. The defendant has been convicted of 22 prior misdemeanor offenses, 13 of which were alcohol related. He has some rehabilitative qualities. Yet these facts demonstrate the defendant has a "special need" for treatment. His problem is so severe that he is willing to serve a prison sentence rather than take a chance that alternative sentencing might be revoked by virtue of his inability to comply with the restrictions of a Community Corrections program.

■ It is not in the best interest of the public, as evidenced by these circumstances, to in all cases permit a defendant the right to refuse probation, Community Corrections, or any other alternative sentence. The assessment of the appropriate sentence, alternative or otherwise, is the responsibility of the trial judge. Studies indicate that probation and other alternatives are less expensive than incarceration. Our legislature has recognized that "scarce prison resources should enter into the sentencing evaluation." Sentencing Commission Comments, § 40-35-102. Trial judges have been urged to take novel approaches to deter crime.

In *State v. Ashby*, 823 S.W.2d 166 (Tenn. 1991), our Supreme Court acknowledged that the Community Corrections Act was passed during an extraordinary session of the General Assembly to address the issue of prison overcrowding. The Court ruled that "sentences must accede to the reality that the state does not have available sufficient prison facilities to accommodate all persons who, according to traditional concepts of punishment, would be incarcerated." *Id.* at 168. Under these circumstances, we think it would be entirely unacceptable for a defendant to have veto power over a Community Corrections sentence.

■ In summary, we hold that while written applications for a sentence under the Community Corrections Act may be preferable, it is not mandatory. A defendant has no right to reject probation or any other means of alternative sentencing in order to accept the imposition of a Department of Correction sentence. This defendant, in obvious need of treatment, has been unable to overcome the presumptive correctness of the trial court's Community Corrections sentence.

Accordingly, the judgment is affirmed.

SCOTT, P.J., and W. FRANK CRAWFORD, Special Judge, concur.

---

**2.** The 1992 Tennessee Sentencing Commission Report provides that the operating cost per inmate in the state facility is $61.55 per day. For local jails, the cost is $28.00 per day. By contrast, probation costs the taxpayer $1.74 per day. Community Corrections has a daily cost of $12.18.