# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### Assigned on Briefs April 25, 2012

## STATE OF TENNESSEE v. NATHANIEL KELLY

**Appeal from the Criminal Court for Davidson County**
No. 2009-A-438    Mark J. Fishburn, Judge

No. M2011-01311-CCA-R3-CD - Filed August 22, 2012

The Defendant, Nathaniel Kelly, appeals as of right from the Davidson County Criminal Court's revocation of his community corrections sentence and order of incarceration. The Defendant contends (1) that the trial court abused its discretion in revoking his community corrections sentence and placing his original sentence into effect, instead of ordering a period of shock incarceration followed by release to community corrections, and (2) that the trial court did not issue a statement setting forth the evidence or factors it relied upon in making its determination to revoke his sentence. Following our review, we affirm the trial court's revocation of the Defendant's community corrections sentence.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

D. KELLY THOMAS, JR., J., delivered the opinion of the court, in which JERRY L. SMITH and ROBERT W. WEDEMEYER, JJ., joined.

Lonnie Maze, III, Nashville, Tennessee, for the appellant, Nathaniel Kelly.

Robert E. Cooper, Jr., Attorney General and Reporter; Jeffrey D. Zentner, Assistant Attorney General; Victor S. Johnson, III, District Attorney General; and Rob McGuire, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### FACTUAL BACKGROUND

In January 2009, the Defendant was indicted for sale of less than .5 grams of a Schedule II controlled substance within 1,000 feet of a school, a Class B felony. Pursuant to a negotiated plea agreement, the Defendant pled guilty to the sale of a Schedule II

controlled substance under .5 grams, a class C felony, and received an eight-year sentence, at thirty-five percent release eligibility, with the sentence to be served on community corrections. The sentence was to run concurrently with a sentence the Defendant had received in another case.

On June 14, 2010, the Defendant's community corrections officer filed a violation affidavit with the court alleging that the Defendant had violated the conditions of his community corrections in the following respects: (1) he had failed to obtain employment within thirty days; (2) he had only paid fifteen dollars towards his required monthly court costs payments; (3) he was behind four months on paying his thirty-dollar-per-month community corrections supervision fees; and (4) he was behind twenty-four hours on his sixteen-hour per month community service requirement. A revocation hearing was held on September 2, 2010, and the trial court retired the warrant; the Defendant remained on community corrections.

On December 13, 2010, the Defendant's community corrections officer filed a second violation affidavit alleging that the Defendant had not reported to see her since October 27, 2010, and was considered an absconder. A hearing on the warrant was held on February 23, 2011, and after hearing the evidence, the trial court took the matter under advisement until March 24, 2011, to allow the Defendant an opportunity to complete his job training and community service work. The March 24, 2011 court date was a status report date rather than a hearing date. The revocation hearing, which is the subject of the instant appeal, occurred on May 5, 2011.

At the revocation hearing, the Defendant's community corrections officer, Michelle Casteel, testified that since the February 23, 2011 hearing, the Defendant continued to violate the terms of his community corrections in the following ways: (1) he failed to report weekly; (2) he failed to provide proof of employment; and (3) he failed to complete any community service work. She explained that during the February 23, 2011 hearing, a lady at the hearing, Ms. Guess, volunteered to employ the Defendant at a home healthcare business. Ms. Casteel testified that she facilitated the exchange of information between the Defendant and Ms. Guess, and March 24, 2011, was set as a status date to check the Defendant's progress. She also testified that prior to the status date, she received a letter from Ms. Guess stating that she hired the Defendant on March 2, 2011, and that he was currently in training. Ms. Casteel brought the letter to the status hearing on March 24, 2011, and the revocation hearing was then continued until May 5, 2011.

Ms. Casteel testified that the Defendant had only reported to see her once since the September 2, 2010 hearing. Ms. Casteel further testified that the Defendant told her that he had been unable to report because he was involved in various training programs pertaining

to his home healthcare employment. However, Ms. Casteel testified that she had called Ms. Guess approximately a week before this hearing, and Ms. Guess reported that she had not seen the Defendant for "a couple weeks" and that the training sessions the Defendant mentioned were completed two months prior. Ms. Casteel explained that the Defendant was required under the terms of his community corrections to report to her weekly. However, she testified that, since the February 23, 2011 hearing, the Defendant had only made three in-office appointments and that she "may not see him for two weeks prior or two weeks following."

Ms. Casteel also testified that the Defendant was behind on his community service work. She explained that the Defendant was required to complete sixteen hours of community service per month but that she had not received any hours since September 2010. Ms. Casteel further testified that "everything ha[d] been an issue with [the Defendant]" and characterized his overall performance on community corrections as "None, unmotivated."

The Defendant also testified at the revocation hearing. He testified that he had done several required training classes for the new job over a two week period and that he was waiting on Ms. Guess to get him "bonded and find . . . a home to put [him] in."[1] The Defendant testified that Ms. Guess told him at the March 24, 2011 status hearing that she still did not have a home to put him in, and at that point, he started seeking other employment. The Defendant further testified that, as a result of his job search, he had an interview with Burger King scheduled for the day of the hearing.

When asked about his failure to complete his community service, the Defendant responded, "I have no excuse for the community service work, I feel like to me I needed to get a job first off to look for employment to get some money to pay my fees and stuff like and everything like that." The Defendant testified that the trial court told him "30 days of employment, so that is what I was looking for" but conceded that he could have gotten his community service "out the way." Regarding his failure to meet with Ms. Casteel, the Defendant testified that he only met with her three times because he believed that his meeting with her before court counted as contacts. The Defendant stated that he knew that the trial court and the assistant district attorney general were "tired of seeing" him and that Ms. Casteel was "tired of going through this[.]" He also stated that he was tired of going through this as well and reiterated that he had an interview scheduled for that day.

On cross-examination, the Defendant admitted that he was behind on his community

---

[1] The Defendant explained that being "bonded" means "an employer might be more willing to hire [him] if something comes up missing because he's bonded they know [he] would give it back." The court added that the State requires a person to be bonded to work in home healthcare.

service prior to the February 23, 2011 hearing. He also admitted that he had stopped reporting at the end of October 2010, after a new violation warrant was taken out on him.

After finding that the Defendant had violated the terms of his community corrections sentence, the trial court revoked the Defendant's community corrections and ordered him to serve his original sentence in confinement. The trial court also granted the Defendant credit for previous jail time, totaling over a year.

The Defendant perfected a timely appeal.

ANALYSIS

The Defendant contends that the trial court erred in revoking his community corrections sentence and ordering him to serve his original sentence in confinement rather than imposing a period of shock incarceration followed by community corrections. Additionally, the Defendant alleges that the trial court failed to state, orally or in writing, the evidence or factors it relied upon in making its determination to revoke his community corrections sentence and requests a new revocation hearing. The State responds that the court properly revoked the Defendant's community corrections sentence and that the trial court's oral statements, memorialized in an "authenticated verbatim transcript of the hearing[,]" substantially comply with the written requirement.

The decision to revoke a community corrections sentence rests within the sound discretion of the trial court and will not be disturbed on appeal unless there is no substantial evidence to support the trial court's conclusion that a violation occurred. State v. Harkins, 811 S.W.2d 79, 82-83 (Tenn. 1991). Pursuant to Tennessee Code Annotated section 40-35-311(e), the trial court is required only to find that the violation of a community corrections sentence occurred by a preponderance of the evidence. In reviewing a trial court's findings, this court must examine the record and determine whether the trial court has exercised a conscientious judgment rather than an arbitrary one. State v. Mitchell, 810 S.W.2d 733, 735 (Tenn. Crim. App. 1991). Once there is sufficient evidence to establish a violation of a community corrections sentence, the trial court has the authority to revoke the community corrections sentence. Tenn. Code Ann. § 40-36-106(e). The trial court may then "resentence the defendant to any appropriate sentencing alternative, including incarceration, for any period of time up to the maximum sentence provided for the offense committed, less any time actually served in any community-based alternative to incarceration." Tenn. Code Ann. § 40-36-106(e)(4).

The community corrections program was created as an alternative to incarceration that provides flexibility and promotes accountability, while reducing the number of "nonviolent felony offenders" in the state prison system. Tenn. Code Ann. § 40–36–104; see also State v. Estep, 854 S.W.2d 124, 126–27 (Tenn. Crim. App. 1992) ("[T]he community corrections sentence provides a desired degree of flexibility that may be both beneficial to the defendant yet serve legitimate societal purposes."). While the program provides defendants with freedom that would otherwise be removed if the defendant had been incarcerated, there are specific remedies available to the trial court to ensure that those who fail to comply with the program are sufficiently penalized for their noncompliance. Tenn. Code Ann. § 40–36–106(e)(4).

After finding that the Defendant had violated the terms of his community corrections, the trial court properly ordered his original sentence into execution. The Defendant's probation officer testified that he had missed several appointments, had not paid his community corrections fees, had not secured a job, and had not completed his required community service hours. Although the Defendant offered excuses as to why he had missed several appointments, had not paid his fees, and had not secured a job, the Defendant admitted that he had not completed his community service and offered no excuse for his noncompliance. Because there is substantial evidence that the Defendant violated the terms of his release, the trial court did not abuse its discretion by ordering the Defendant to serve the balance of his sentence in confinement.

Regarding the Defendant's contention that the trial court failed to make an oral or written statement setting forth the factors it relied on in making its determination, we conclude that the oral statement given by the trial court before ordering the original sentence into effect was sufficient under State v. Delp, 614 S.W.2d 395 (Tenn. Crim. App. 1980). In Delp, the trial court made no written findings, but this court held that the trial judge's "authentication of the verbatim transcript of the hearing, including his findings, was substantial compliance with the requirement that he make a written statement of the evidence relied on and the reasons for his action in revoking probation." Id. at 397. In the instant case, the trial court found that the Defendant had violated the terms of his community corrections. The trial court also stated, "It's obvious to the Court he can't even do the minimum requirements under Community Corrections and has been unable to do so since he was placed on Community Corrections. . . . he's not going to get it done, revoke his Community Corrections, place his sentence into effect." Therefore, the oral statement made by the trial court and its authentication of the hearing transcript constituted substantial compliance with the requirement that it make a written statement of the evidence relied on in revoking the Defendant's community corrections.

## CONCLUSION

Accordingly, the judgment of the trial court is affirmed.


_____
D. KELLY THOMAS, JR., JUDGE