IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs February 19, 2015

**STATE OF TENNESSEE v. CHRISTOPHER LEE GOINS**

**Appeal from the Circuit Court for Blount County**
**Nos. C-19634, C-21137     Tammy M. Harrington, Judge**

_____

**No. E2014-01543-CCA-R3-CD – Filed May 4, 2015**

_____

The Defendant, Christopher Lee Goins, appeals as of right from the Blount County Circuit Court's revocation of his community corrections sentences and order of incarceration. The Defendant contends that the trial court abused its discretion in revoking his community corrections sentences and ordering his original sentences into effect. Discerning no error, we affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed**

D. KELLY THOMAS, JR., J, delivered the opinion of the court, in which NORMA MCGEE OGLE and ROBERT H. MONTGOMERY, JR., JJ., joined.

J. Liddell Kirk (on appeal), Knoxville, Tennessee; Raymond Mack Garner, District Public Defender; and George Houston Waters (at hearing), Assistant District Public Defender, for the appellant, Christopher Lee Goins.

Herbert H. Slatery III, Attorney General and Reporter; Ahmed A. Safeeullah, Assistant Attorney General; Michael L. Flynn, District Attorney General; and Shari Lynn Tayloe, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

FACTUAL BACKGROUND

On April 15, 2011, the Defendant pled guilty in case number C-19634 to aggravated burglary and aggravated assault, and he received an effective sentence of six years, at thirty percent release eligibility, in the Tennessee Department of Correction ("TDOC"), with all but six months suspended to probation.

On August 2, 2012, the Defendant's probation officer filed a probation violation report for case number C-19634 alleging that the Defendant had violated the terms of his probation in the following respects: (1) he had been arrested for theft of property on July 23, 2010; (2) he had failed to report his arrest to his probation officer; and (3) he had failed to make a single payment towards the $829 he owed in court costs and had failed to pay $250 to the Criminal Injuries and Compensation Supervision Fund as ordered.

On September 28, 2012, the Defendant pled guilty in case number C-21137 to theft of property valued at more than $10,000 but less than $60,000, a Class C felony. He was sentenced to four years in the TDOC, at thirty percent release eligibility, with the sentence to be served on community corrections. The sentence was ordered to be served consecutively to his preexisting "Blount County Circuit [Violation of Probation]."[1] On that same date, the trial court entered an order revoking the Defendant's probation in case number C-19634 and ordering split confinement, with nine months' service in the Blount County jail and the remainder on community corrections.[2]

On April 17, 2013, a violation affidavit was filed against the Defendant alleging that the Defendant had violated the conditions of his community corrections sentences in the following respects: (1) he had failed to be honest with an officer about a failed drug screen; (2) he had purchased or traded drugs from persons known to sell or traffic illegal drugs; (3) he had tested positive for and admitted to using cocaine, oxycodone, and morphine; (4) he had failed to pay thirty dollars in supervision fees; and (5) he had failed to provide required proof of payments to the court. On July 30, 2013, the violation warrant was amended, alleging an additional violation: the Defendant had been charged with theft of property valued at less than $500 and simple possession/casual exchange on July 27, 2013. On September 9, 2013, the trial court entered an order[3] imposing a sentence of split confinement, with one year to be served in the Blount County jail, after which the Defendant would be returned to community corrections.

On April 7, 2014, a second violation affidavit was issued alleging that the Defendant had violated the terms of his community corrections sentence in the following respects: (1) he had been charged with possession of drug paraphernalia, driving on a revoked license, resisting arrest, evading arrest, and possession of a prohibited weapon; (2) he had failed to pay forty-five dollars in supervision fees; and (3) he had failed to

---

[1] The judgment form does not specifically reference case number C-19634.
[2] The Defendant waived his right to a hearing on this matter and stipulated to the facts set forth in the probation violation report.
[3] The Defendant again waived his right to a hearing and stipulated to the facts set forth in the violation of community corrections warrant.

provide required proof of payments to the court. On August 4, 2014, the trial court held a revocation hearing, which is the subject of the instant appeal.

At the hearing, Officer Rodney Wilson of the Alcoa Police Department testified that on March 24, 2014, he was on patrol when he observed the Defendant driving a Buick with "dark tinted windows." Suspecting that the Defendant's windshield tint exceeded that allowed by statute, Officer Wilson initiated a traffic stop, approached the vehicle, and instructed the Defendant to roll his windows down. Officer Wilson "observed a [twenty dollar] bill in [the Defendant's] hand, which is commonly used in narcotics transactions." When Officer Wilson asked for the Defendant's driver's license, the Defendant was unable to produce it, although he did provide the car's registration information. Officer Wilson then asked the Defendant to take his keys out of the ignition and place them on top of the car.

Officer Wilson then walked back to his cruiser and ran a records check on the Defendant. Records showed that the Defendant's license had been revoked, and at that point, Officer Wilson requested that the Defendant exit his vehicle. After multiple requests, the Defendant stepped out of the vehicle and ran away from the scene. Officers eventually found him "hiding under some bushes." They attempted to take him into custody, but the Defendant resisted arrest. After being "tasered" and "pepper sprayed," the Defendant was taken into custody.

A later inventory search of the vehicle revealed a "club" in the driver's side floorboard, a "sap, which is used . . . as a weapon," some needles, and a razor blade. Officer Wilson denied finding any narcotics in the vehicle.

While in police custody, the Defendant requested medical attention, and he was transported to Blount Memorial Hospital. Officer Wilson began obtaining warrants and was later informed that the Defendant had fled the hospital. According to Officer Wilson, the Defendant was ultimately taken into custody by the sheriff's office.

Brian Hensley testified that he was the District Supervisor for Blount County Community Corrections. Mr. Hensley testified that the Defendant had previously been "on [his] caseload" but that the Defendant's case was reassigned when he was taken into custody. Additionally, Mr. Hensley testified that he had "been the keeper of the record the whole time."

According to Mr. Hensley, the Defendant began the Community Corrections Program in February 2013, after serving nine-months' split confinement for a probation violation. Mr. Hensley confirmed that the Defendant had twice violated the rules of his community corrections sentence. Mr. Hensley first issued a violation warrant on April

17, 2013. After serving split confinement, the Defendant was returned to community corrections in December 2013. On April 7, 2014, Mr. Hensley filed a second violation warrant against the Defendant.

Mr. Hensley testified that the Defendant had never made "supervision payments" while on community corrections because "he was in jail, out of jail, back and forth." The Defendant also never reported his new charges to community corrections. Mr. Hensley opined that, given the Defendant's previous history with alternative sentencing, he would never be successful in the Community Corrections Program.

Mr. Hensley testified that between December 2013 and March 2014, the Defendant had apparently been reporting as required prior to the filing of the first violation affidavit, otherwise Mr. Hensley would have issued a warrant. The Defendant was tested for drugs while in the program. As was reflected in the first violation warrant, "there was an admitted use after a test," but the Defendant passed three subsequent drug tests.

According to Mr. Hensley, the Defendant was in the Moral Reconation Therapy program and had been assessed for drug abuse problems. The Defendant "scored high in criminal history . . . [and] medium risk in drug and alcohol . . . ." Mr. Hensley testified that he did not recommend the Defendant as a good candidate for community corrections based on the Defendant's history of criminal activity and drug use. Additionally, Mr. Hensley had discussions with the Defendant, which led him to believe that the Defendant "[d]oesn't take the guidance and the coaching real well" and "it's got to be his way or no way."

The Defendant testified and admitted that he had needles in his possession when he was arrested on March 24, 2014. He further admitted that he was "in the process of buying drugs" when Officer Wilson pulled him over. The Defendant testified that he had used drugs since being released from a psychiatric facility about fifteen years ago. According to the Defendant, he was diagnosed with "chronic bipolar-ness and paranoid schizophrenia and mood disorder" but had since stopped "taking [his] medications and used drugs as a crutch to cope with [his] disorder." In particular, the Defendant abused morphine and cocaine.

The Defendant testified that he never had an opportunity to go to an inpatient rehabilitation facility before and that "through active addiction" he "was kind of scared to detox." He acknowledged that he would "dry out" in jail but that as soon as he got out he would resort back to drugs because he "didn't really have the tools or the guidance to do right." The Defendant testified that he was able to avoid drugs for a short period after his

son was born but that when his relationship with his son's mother deteriorated, he began using drugs again.

He admitted that, in the past, he did not make efforts to get into drug treatment programs. However, the Defendant testified that he had been a journeyman welder for the past ten years and "could make good money," adding that he "honestly believe[d] if [he] could get into an extensive inpatient treatment facility," he "could do some good with it." He indicated that, currently, he was "[a]bsolutely" willing to undergo drug treatment. The Defendant acknowledged that it was his fault for not seeking out available resources in the past but stated that he "honestly believe[d]" he could succeed on community corrections.

The trial court found that the State met its burden of proving that the Defendant violated the conditions of his community corrections sentence and ordered that he serve the balance of his sentence in custody. The Defendant timely appealed.

ANALYSIS

The Defendant contends that the trial court abused its discretion in revoking his community corrections sentences and ordering his original sentences into effect. In particular, he alleges that although "there was evidence that the Defendant was in violation of the terms of [his] release," the trial court "perhaps abused [its] discretion" by ordering his sentences into effect rather than allowing his admission into a substance abuse treatment program. The State responds that the trial court properly exercised its discretion when it revoked the Defendant's community corrections sentences.

The Community Corrections Program was created as an alternative to incarceration that provides flexibility and promotes accountability, while reducing the number of "nonviolent felony offenders" in the state prison system. Tenn. Code Ann. § 40-36-104; see also State v. Estep, 854 S.W.2d 124, 126-27 (Tenn. Crim. App. 1992) ("[T]he community corrections sentence provides a desired degree of flexibility that may be both beneficial to the defendant yet serve legitimate societal purposes."). While the program provides defendants with freedom that would otherwise be removed if the defendant had been incarcerated, there are specific remedies available to the trial court to ensure that those who fail to comply with the program are sufficiently penalized for their noncompliance. Tenn. Code Ann. § 40-36-106(e)(4).

Pursuant to Tennessee Code Annotated section 40-35-311(e), the trial court is required only to find that the violation of a community corrections sentence occurred by a preponderance of the evidence. Once there is sufficient evidence to establish a violation of a community corrections sentence, the trial court has the authority to revoke the

community corrections sentence. Tenn. Code Ann. § 40-36-106(e). The trial court may then "resentence the defendant to any appropriate sentencing alternative, including incarceration, for any period of time up to the maximum sentence provided for the offense committed, less any time actually served in any community-based alternative to incarceration." Tenn. Code Ann. § 40-36-106(e)(4). An appellate court will uphold a trial court's decision to revoke probation or community corrections absent an abuse of discretion. State v. Beard, 189 S.W.3d 730, 735 (Tenn. Crim. App. 2005).

The Defendant does not challenge the sufficiency of the evidence underlying his violation but instead asserts that the trial court "perhaps" abused its discretion by not allowing his admission into a substance abuse treatment program. The record reflects that the trial court specifically considered the Defendant's history of drug abuse before revoking his community corrections sentences. The court stated that it was "committed" to trying "to break th[e] cycle" of drug abuse but that its commitment had to be balanced with the safety of the community and the Defendant's amenability to correction. The Defendant had three opportunities to complete alternative sentences and receive help for his drug addiction, but he was ultimately unable to adhere to the terms of his probation and community corrections sentences. The evidence overwhelmingly supports the trial court's decision to revoke the Defendant's community corrections sentences, and the Defendant's argument is therefore without merit.

## CONCLUSION

In sum, we conclude that the trial court did not abuse its discretion by revoking the Defendant's community corrections sentences and by ordering him to serve the balance of his original sentences in confinement. Accordingly, we affirm the judgments of the trial court.

_____
D. KELLY THOMAS, JR., JUDGE

-6-