
IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs November 15, 2016

## STATE OF TENNESSEE v. TRAVIS PALLARIA

**Appeal from the Circuit Court for Blount County**
**Nos. C-211-69 & C-211-70        David R. Duggan, Judge**

_____

**No. E2016-00748-CCA-R3-CD**

_____

The Defendant, Travis Pallaria, appeals as of right from the Blount County Circuit Court's revocation of his community corrections sentence. The Defendant cites evidence excusing his violation and contends that the trial court was unduly harsh and abused its discretion in ordering the Defendant to serve the balance of his sentence in confinement. Following our review, we affirm the revocation and confinement order of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed**

D. KELLY THOMAS, JR., J., delivered the opinion of the court, in which ROBERT H. MONTGOMERY, JR., and TIMOTHY L. EASTER, JJ., joined.

J. Liddel Kirk (on appeal), Knoxville, Tennessee; and Mack Garner, District Public Defender (at hearing), for the Defendant, Travis Pallaria.

Herbert H. Slatery III, Attorney General and Reporter; Katherine C. Redding, Assistant Attorney General; Michael L. Flynn, District Attorney General; Matthew Dunn, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

### FACTUAL BACKGROUND

In December 2013, the Defendant pled guilty to theft of property valued at $1,000 or more but less than $10,000, a Class D felony, and theft of property valued at $10,000 or more but less than $60,000, a Class C felony. See Tenn. Code Ann. §§ 39-14-103, -105. In exchange for his plea, he received a four-year sentence and was placed on judicial diversion. However, after committing new criminal offenses in Virginia, the Defendant's diversion was terminated, and the court ordered him to serve one year in

confinement. Upon his release, he was placed under community corrections. He remained under community corrections until March 10, 2016, when his community corrections supervisor issued a violation warrant. The warrant alleged that the Defendant violated the terms of his community corrections sentence by (1) violating his curfew; (2) failing to pay required fees; and (3) being untruthful to the supervision officer.

At the March 22, 2016 community corrections revocation hearing, Richard Stonis, the Defendant's community corrections supervisor, explained that the following facts gave rise to the issuance of the warrant: The Defendant had a curfew of 8:00 p.m. On March 8, 2016, Mr. Stonis went to the Defendant's residence at 9:10 p.m.; however, the Defendant was not at home. Mr. Stonis called the Defendant who explained that he was "at a friend's home helping him clean and had lost track of time." The Defendant further stated that he was on his way to pick up his girlfriend at Firehouse Subs, her place of employment. Mr. Stonis went to the Firehouse Subs' parking lot and waited on the Defendant to arrive. At 9:57 p.m., Mr. Stonis had not seen the Defendant, and he left. At a meeting with the Defendant the next day, the Defendant told him that he was driving a blue Honda and arrived at Firehouse Subs at 9:45 p.m. and returned to his residence at 10:35 p.m. Mr. Stonis testified that he never saw a blue Honda in the Firehouse Subs' parking lot.

Mr. Stonis further testified that the Defendant had failed to pay his supervision fees from June 2015 to March 2016. On the day before the hearing, the Defendant did pay past supervision fees; however, he still owed fees for two months, according to Mr. Stonis. Additionally, Mr. Stonis testified that the Defendant informed him that he was "changing jobs" but did not tell him that he had been fired from his previous job. When later asked, the Defendant explained that he was terminated from his job because he "didn't get along with one of the managers." He claimed that he had obtained another job at "Turf Masters" and "would be starting the next night." At the time of his arrest, the Defendant had not started a new job and had not provided Mr. Stonis with proof of any employment.

On cross-examination, Mr. Stonis acknowledged that this was the Defendant's first violation of the terms of his community corrections sentence and that the Defendant did not have a substance abuse problem. Additionally, Mr. Stonis agreed that the Defendant complied with the special conditions of his community corrections sentence by attending "MRT" classes.

The Defendant testified in his own defense. He agreed that he violated his curfew; however, he insisted that he had picked up his girlfriend at Firehouse Subs on March 8, 2016. He testified that upon his release, he would begin his new employment and that he had set up a payment plan for his remaining supervision fees. He claimed that he was behind in his payments because he had multiple community corrections officers and that

he had "got[ten] confused." Rather than serving the balance of his sentence in confinement, the Defendant suggested that he serve a punitive ten days in jail before being returned to community corrections.

Following the hearing, the trial court found that the Defendant had violated his curfew, failed to notify his supervision officer about a "change of employment[,]" and failed to pay supervision fees on time and still had an outstanding balance. The trial court noted that Mr. Stonis' testimony was credible and noted that the Defendant had originally been on judicial diversion, but that was revoked when he obtained new charges in Virginia. The court ordered the Defendant to serve the balance of his sentence in confinement. The Defendant received jail credit on his four-year sentence for his time in custody and his time on community corrections. He filed a timely notice of appeal.

ANALYSIS

The Defendant contends that the trial court abused its discretion in revoking his community corrections sentence, noting that he did violate the terms of his community corrections; however, it was an accidental violation because he lost track of time while helping a friend. He argues that the evidence "did not suggest that he did not pick up [his girlfriend at Firehouse Subs] at some point" on the night in question, but rather that he may have been mistaken about the exact time he arrived at Firehouse Subs. Additionally, he argues that it is possible that Mr. Stonis simply missed seeing the blue Honda in the parking lot that evening. He also argues that Mr. Stonis did not know the reasons for the Defendant's change in employment, but Mr. Stonis did have notice of the change. The Defendant argues that on balance, the trial court's order that he serve the balance of his sentence in confinement was unduly harsh and an abuse of the court's discretion. The State responds that there was substantial evidence in the record to support the trial court's decision. Thus, the State concludes that the trial court acted within its discretion in revoking the Defendant's community corrections sentence and ordering the Defendant to serve the balance of his sentence in confinement. We agree with the State.

The Tennessee Supreme Court has held that the same principles that apply in the revocation of probation also apply in the revocation of community corrections. State v. Harkins, 811 S.W.2d 79, 83 (Tenn. 1991). The revocation of community corrections, like the revocation of probation, rests within the sound discretion of the trial court. Id. An appellate court will uphold a trial court's decision to revoke probation or community corrections absent an abuse of discretion. State v. Beard, 189 S.W.3d 730, 735 (Tenn. Crim. App. 2005); State v. Webb, 130 S.W.3d 799, 842 (Tenn. Crim. App. 2003) (quoting Harkins, 811 S.W.2d at 82).

3

Pursuant to Tennessee Code Annotated section 40-35-311(e), the trial court is required only to find that the violation of a community corrections sentence occurred by a preponderance of the evidence. Once there is sufficient evidence to establish a violation of a community corrections sentence, the trial court has the authority to revoke the community corrections sentence. Tenn. Code Ann. § 40-36-106(e). The trial court may then "resentence the defendant to any appropriate sentencing alternative, including incarceration, for any period of time up to the maximum sentence provided for the offense committed, less any time actually served in any community-based alternative to incarceration." Tenn. Code Ann. § 40-36-106(e)(4).

The community corrections program was created as an alternative to incarceration that provides flexibility and promotes accountability, while reducing the number of "nonviolent felony offenders" in the state prison system. Tenn. Code Ann. § 40-36-104; see also State v. Estep, 854 S.W.2d 124, 126-27 (Tenn. Crim. App. 1992) ("[T]he community corrections sentence provides a desired degree of flexibility that may be both beneficial to the defendant yet serve legitimate societal purposes."). While the program provides defendants with freedom that would otherwise be removed if the defendant had been incarcerated, there are specific remedies available to the trial court to ensure that those who fail to comply with the program are sufficiently penalized for their noncompliance. Tenn. Code Ann. § 40-36-106(e)(4).

In rendering its decision to revoke the Defendant's sentence and to order incarceration, the trial court in this case reasoned as follows:

The [c]ourt, on this proof, is going to find that [the Defendant] has . . . engaged in a material violation of the terms of his Community Corrections sentence based upon violating his curfew. Regardless of what his reasons were, he was in violation of his curfew. Also, by failing to notify his officer of change of employment, and failing to pay his fees. Now, he's apparently made a recent payment that's caught up most of those, but nevertheless he still has not caught up all of them, and he was late in making his fees. Now, if he had caught up everything and brought it completely current, then I wouldn't make a finding on that ground. But he did not do that. So, he's also failed to pay his fees.

Now, with respect to whether or not he made a full and truthful report to the officer about picking up his girlfriend -- and, of course, he was still in violation of his curfew regardless of what he said. But he insists that he -- I suppose it's possible that he was just mistaken about the time, but he insists that he picked his girlfriend up at the time that the officer was in the parking lot watching and knew that he wasn't there, not that it might have been later. He insists that he did it by the time that the officer was in the

4

parking lot. And I'm going to find that in favor of the State as well, because I find the officer to be credible. And I find [the Defendant] to be credible with respect to the time that he insists he was there. And I mean in respect to what time it was, not that he was actually in the parking lot.

Now, I've heard worse violations, that's certainly true. But on the other hand, he's on Community Corrections. And as I've said many times, it's already been deemed that you are a person who appropriately should be serving a sentence in prison; it's just that you're allowed to serve that sentence in the community. And he does have a prior violation from when he was on probation, based upon theft charges in Spotsylvania, Virginia, and possession of controlled substances, to which he stipulated, I believe. Yes, he waived his right to a hearing and stipulated and was given a one-year split confinement in December of 2013. And you wonder -- the Court can only wonder, if a one-year split confinement did not get his attention and if a one-year split confinement followed by Community Corrections did not get his attention, what would. And I don't know, apparently he's fairly near the end of this, but to me that's more -- that works against him more than it helps him to be this close to the end of his sentence, if he is that close, and not care about doing those few little things that he had to do to be able to stay out of trouble long enough to get this behind him. It's just typical of the attitude that we see so many times, that I'll do what I want to do when I want to do it, and I don't care. That's what I see here. And therefore, I'm going to revoke him to serve.

In short, the trial court concluded that the Defendant violated the terms of his community corrections by violating his curfew, failing to notify his supervision officer about a change in his employment, and failing to timely pay supervision fees and had a remaining outstanding balance. The court accredited Mr. Stonis' testimony. In a revocation hearing, the credibility of witnesses is determined by the trial court. State v. Mitchell, 810 S.W.2d 733, 735 (Tenn. Crim. App. 1991). We will not disturb this credibility finding on appeal.

The trial court was within its discretion to determine that the Defendant violated the conditions of his community corrections sentence by a preponderance of the evidence. The trial court further noted that this was the Defendant's second violation. This court has repeatedly held that "an accused, already on [a suspended sentence], is not entitled to a second grant of probation or another form of alternative sentencing." State v. Dannie Brumfield, No. M2015-01940-CCA-R3-CD, 2016 WL 4251178, at *3 (Tenn. Crim. App. Aug. 10, 2016) (quoting State v. Jeffrey A. Warfield, No. 01C01-9711-CC-00504, 1999 WL 61065, at *2 (Tenn. Crim. App. Feb. 10, 1999)); see also State v. Timothy A. Johnson, No. M2001-01362-CCA-R3-CD, 2002 WL 242351, at *2 (Tenn.

5

Crim. App. Feb. 11, 2002). Because there was substantial evidence that the Defendant violated the terms of his release, the trial court, pursuant to its discretionary authority, properly revoked the Defendant's community corrections sentence and ordered him to serve the balance of his four-year sentence in confinement. See Tenn. Code Ann. § 40-36-106(e)(4).

## CONCLUSION

Based upon consideration of the foregoing and the record as a whole, we affirm the judgments of the trial court.

_____

D. KELLY THOMAS, JR., JUDGE