IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
January 28, 2020 Session

## STATE OF TENNESSEE V. ALFRED R. MASON

**Appeal from the Circuit Court for Sevier County**
**No. 22714, 23363    James L. Gass, Judge**

_____

## No. E2019-00916-CCA-R3-CD

_____

Alfred R. Mason, Defendant, pled guilty to various drug offenses and received a sentence to be served on community corrections. After a violation warrant was filed and Defendant admitted to the violation, the trial court revoked community corrections and ordered Defendant to serve his sentence. Defendant appeals from the revocation of his community corrections sentence arguing that the trial court abused its discretion by (1) ordering Defendant to serve the balance of his sentence instead of resentencing him and (2) failing to award Defendant credit for time served on community corrections. After our review, we affirm the revocation of Defendant's community corrections sentence and remand to the trial court. On remand, the trial court should enter amended judgment forms to reflect credit for time successfully served on community corrections prior to the issuance of revocation warrants.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed and Remanded**

TIMOTHY L. EASTER, J., delivered the opinion of the court, in which ROBERT W. WEDEMEYER and ROBERT H. MONTGOMERY, JR., JJ., joined.

Bryce W. McKenzie, Sevierville, Tennessee, for the appellant, Alfred R. Mason.

Herbert H. Slatery III, Attorney General and Reporter; Courtney N. Orr, Assistant Attorney General; Jimmy Dunn, District Attorney General; and Ron Newcomb, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

In case number 22714, Defendant was charged by the Sevier County Grand Jury by presentment with the following: (1) Count One, sale of buprenorphine; (2) Count Two, delivery of buprenorphine; (3) Count Three, conspiracy to sell or deliver buprenorphine; (4) Count Four, sale of a counterfeit controlled substance; and (5) Count Five, sale of a counterfeit controlled substance.[1] In case number 23363, Defendant was charged via presentment with one count of introducing contraband into a penal facility.

On November 13, 2018, Defendant entered guilty pleas in case number 22714 to one count of sale of a Schedule III controlled substance and one count of conspiracy to sell or deliver a Schedule II controlled substance. In case number 23363, Defendant pled guilty to introduction of a Schedule III drug into a penal facility. The negotiated plea agreement specified that Defendant was sentenced to four years for the sale of a Schedule III controlled substance in Count One and two years for conspiracy in Count Three. In Counts Two, Four, and Five, a nolle prosequi was entered. The sentences in case number 22714 were ordered to be served concurrently. In case number 23363, Defendant was sentenced to four years for introduction of contraband into a penal facility. The trial court ordered the sentence in case number 22363 to be served consecutively to the sentences in case number 22714, for a total effective sentence of eight years. The trial court ordered the sentences to be served on community corrections.

A short 72 days later, on January 24 2019, a violation of community corrections warrant was issued against Defendant, alleging that Defendant violated the terms of his community corrections sentence by: (1) failing to report for intake; (2) failing to provide verification that he has completed an alcohol and drug assessment; (3) failing to provide verification that he has completed the neonatal abstinence syndrome class; (4) failing to make himself available for drug screens; and (5) failing to make payments toward financial obligations.

The trial court held a hearing on the violation at which Defendant plead guilty to the violation of community corrections. There was no agreement about Defendant's sentence as part of the plea agreement. At the hearing, the State noted that Defendant

---

[1] In the first part of the presentment for Count III, conspiracy to sell or deliver, the presentment alleged that Defendant sold or delivered "Schedule II Methamphetamine." However, the presentment goes on to detail the acts in furtherance of the conspiracy to sell or deliver "Schedule III Buprenorphine." The "waiver of jury trial and guilty plea" included in the record indicated that the parties understood Defendant was charged in this count with conspiracy to sell or delivery buprenorphine. The judgment form disposing of Count III indicates that Defendant was convicted of conspiracy to sell and/or delivery "narcotics," without specifying a classification of controlled substance, and classifies the offense as a Class E felony. Conspiracy to sell or deliver a Schedule III substance is punishable as a Class E felony. See T.C.A. §§ 39-17-417(d)(1) (setting forth punishment for sale or delivery of a Schedule III controlled substance as a Class D felony); 39-12-107(c) (explaining that conspiracy is punished one classification level lower than the offense that is the subject of the conspiracy) .

was "facing a contraband charge pending bound-over status" in case number 25603, and explained that the State agreed Defendant would "enter a plea of guilty to the misdemeanor simple possession and run it concurrent to whatever sentence that he receive[d]" from the "open plea to the VOP."

Although the record does not contain a formal hearing wherein Defendant was subjected to cross examination, Defendant chatted with the trial judge, telling him that he was 40 years of age and had "been to prison twice." Defendant explained that his sister disappeared while he was on community corrections and he was "not going to lie" to the court, admitting that he "shot dope." Defendant stated that he had "been a trustee for 20 months in jail both times."

The trial court determined that the "history" was "very concerning" because Defendant had "three failed attempts at complying with release into the community." In 2009, Defendant was on parole on a four-year sentence and was revoked. In 2011, Defendant had another violation of probation. The trial court noted that as a result of the violation, Defendant's sentence was "revoked, reinstated with a one-year extension and [the addition of] 100 hours of community service work." In 2012, Defendant's probation was again revoked. This time "he was revoked to serve the sentence." The trial court opined that Defendant was sober and a reliable inmate but that he has a problem complying with release into the community. The trial court continued:

> I see folks that come back off probation and don't make it because drugs have impacted their life. We now today have much more resources to help with folks that have been given a chance and failed. But in this situation, I'm going to tell you, I cannot - - given that there's revocations, . . . . And given that that's the situation, the [c]ourt is of the opinion that that prior history of failing to comply with the requirements of probation have failed, the community corrections efforts have failed, and for those reasons, this [c]ourt will order you to execute the sentence in your probation violation.

The written "VOP Order" entered on May 2, 2019, found Defendant violated the terms of his community corrections sentence by "[f]ailure to [r]eport" and ordered Defendant to "serve the balance" of his sentence. The order is silent as to whether Defendant received credit for time served on community correction. There are no amended judgment forms in the record.

*Analysis*

On appeal, Defendant argues that the trial court abused its discretion by ordering Defendant to serve the balance of his sentence in incarceration and by failing to order

Defendant receive credit for time served on community corrections. The State, on the other hand, insists that the trial court properly revoked Defendant's community corrections sentence. The State concedes, however, that the trial court erred by failing to enter an amended judgment to reflect Defendant was entitled to credit for time served on community corrections.

"The Community Corrections Program was created as an alternative to incarceration that provides flexibility and promotes accountability, while reducing the number of 'nonviolent felony offenders' in the state prison system." *State v. Dennis Karr*, No. E2014-01245-CCA-R3-CD, 2015 WL 1593635, at *4 (Tenn. Crim. App. Apr. 7, 2015) (citing T.C.A. § 40-36-104; *State v. Estep*, 854 S.W.2d 124, 126-27 (Tenn. Crim. App. 1992)), *no perm. app. filed*. "While the program provides defendants with freedom that would otherwise be removed if the defendant had been incarcerated, there are specific remedies available to the trial court to ensure that those who fail to comply with the program are sufficiently penalized for their noncompliance." *Id*. (citing T.C.A. § 40-36-106(e)(4)).

The procedures for revocation of probation and community corrections are similar, and the same legal principles apply. *State v. Harkins*, 811 S.W.2d 79, 83 (Tenn. 1991). A trial court may "revoke a sentence of probation or a suspended sentence upon a finding that the defendant has violated the conditions of his probation or suspended sentence by a preponderance of the evidence." *Id.* at 82 (citing T.C.A. § 40-35-311); *see* T.C.A. § 40-36-106(e)(3)(B). Proof of a violation "need not be established beyond a reasonable doubt, but it is sufficient if it allows the trial judge to make a conscientious and intelligent judgment." *Harkins*, 811 S.W.2d at 82. On appeal, this Court will review a trial court's decision to revoke a community corrections sentence under an abuse of discretion standard of review. *Id*. To find an abuse of discretion, the record must contain no substantial evidence to support the conclusion of the trial judge that a violation has occurred. *Id*. In reviewing the trial court's findings, it is our obligation to examine the record and determine whether the trial court has exercised a conscientious judgment rather than an arbitrary one. *State v. Mitchell*, 810 S.W.2d 733, 735 (Tenn. Crim. App. 1991). Once a trial court has found sufficient evidence of a violation, the trial court has the authority to revoke the community corrections sentence. T.C.A. § 40-36-106(e). Then, the trial court has the option to "resentence the defendant to any appropriate sentencing alternative, including incarceration, for any period of time up to the maximum sentence provided for the offense committed, less any time actually served in any community-based alternative to incarceration. T.C.A. § 40-36-106(e)(4).

Defendant does not dispute that he "admitted to failing to report to community corrections due to extreme circumstances in his life" but argues that it was improper for the trial court to enter a revocation order "without appropriate resentencing." Revocation

of a community corrections sentence does not require a trial court to hold a new sentencing hearing unless the trial court imposes a new sentence. *State v. Samuels*, 44 S.W.3d 489, 493-94 (Tenn. 2001); *State v. Crook*, 2 S.W.3d 238, 240 (Tenn. Crim. App. 1998); *State v. Willy J. Hall*, No. E2014-01156-CCA-R3-CD, 2015 WL 2258008, at *3 (Tenn. Crim. App. May 13, 2015) (noting that "[w]hen the trial court does not alter the length, terms, or conditions of the sentence imposed, the court is not required to hold a sentencing hearing), *no perm. app. filed*. Defendant herein admitted that he "shot dope" and failed to report while on a community corrections sentence. Moreover, Defendant's presentence report revealed multiple violations. In our view, the trial court did not abuse its discretion in ordering Defendant to serve the balance of his sentence in confinement. Defendant is not entitled to relief on this issue.

*Jail Credit/Amended Judgment Forms*

Defendant also argues that this Court should remand the matter to the trial court for entry of amended judgments reflecting jail credit for time served on community corrections. The State concedes error. We agree.

"[A] defendant whose community corrections sentence is revoked is entitled to credit toward the sentence for time spent in community corrections prior to revocation." *Carpenter v. State*, 136 S.W.3d 608, 612 (Tenn. 2004) (citing T.C.A. § 40-36-106(e)(4)); *see also* T.C.A. § 40-36-106(e)(3)(B) (stating that an offender serving a community corrections sentence is entitled to credit "for actual time served in the community-based alternative program"). "The award of credit for time served on community corrections is mandatory, and the trial court has no authority to deny credit no matter how lackluster or unsuccessful the defendant's performance." *Jackson v. Parker*, 366 S.W.3d 186, 190 (Tenn. Crim. App. 2011) (internal quotation marks omitted); *see also State v. McNack*, 356 S.W.3d 906, 910 (Tenn. 2011) ("Our courts have held that the language of the statute as to sentence credits is mandatory, not discretionary."). However, a defendant's entitlement to these sentencing credits terminates upon the issuance of a violation warrant. *McNack*, 356 S.W.3d at 912 (relying on *State v. Shaffer*, 45 S.W.3d 553 (Tenn. 2001)). "The interruption of the probationary period is triggered by the issuance of the probation revocation warrant and not by service of the warrant on the defendant." *Shaffer*, 45 S.W.3d at 555 (citing *Allen v. State*, 505 S.W.2d 715, 717 (Tenn. 1974)).

Here, the "VOP Order" stated only that Defendant was to serve the balance of his sentence. It was completely silent as to any credit Defendant earned on community corrections and failed to calculate any jail credits to be applied against the balance of Defendant's sentence. Moreover, there is no amended judgment in the record. Consequently, we must remand the matter to the trial court for entry of amended judgments reflecting credit for time served on community corrections.

*Conclusion*

For the foregoing reasons, the judgment of the trial court is affirmed and remanded for entry of corrected amended judgments.

_____
TIMOTHY L. EASTER, JUDGE