IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
December 10, 2019 Session

## STATE OF TENNESSEE v. RUBALDDI ESPINOZA YOC

**Appeal from the Circuit Court for Bedford County**
**No. 17749     Forest A. Durard, Jr., Judge**

_____

### No. M2018-00585-CCA-R3-CD

_____

Defendant, Rubalddi Espinoza Yoc, appeals the revocation of his community corrections sentence and his subsequent resentencing to serve ten years in the Tennessee Department of Correction ("TDOC"). Defendant argues that the original violation warrant was invalid because his detention and deportation by immigration authorities was a civil matter rather than a criminal arrest or conviction; that the trial court abused its discretion in resentencing Defendant; and that he should receive sentencing credit until the date that he conceded a violation of community corrections. Based on our review of the record, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

TIMOTHY L. EASTER, J., delivered the opinion of the court, in which ROBERT W. WEDEMEYER and ROBERT L. HOLLOWAY, JR., JJ., joined.

Charles E. Reed, Nashville, Tennessee, for the appellant, Rubalddi Espinoza Yoc.

Herbert H. Slatery III, Attorney General and Reporter; David H. Findley, Senior Assistant Attorney General; Robert J. Carter, District Attorney General; and Michael D. Randles, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

Defendant was convicted by a jury of one count of possession with intent to sell .5 grams or more of cocaine and one count of possession with intent to deliver .5 grams or more of cocaine, which were merged by the trial court. On April 21, 2014, the trial court imposed a sentence of nine years, with all but one year suspended to community

corrections.  This Court upheld Defendant's convictions on direct appeal.  *State v. Rubalddi Espinoza Yoc*, No. M2014-01031-CCA-R3-CD, 2015 WL 794188, at *1 (Tenn. Crim. App. Feb. 25, 2015), *no perm. app. filed.*

After service of his period of incarceration, Defendant was taken into custody by the United States Immigration and Customs Enforcement ("ICE").  On February 19, 2015, a community corrections violation warrant was issued based on the following allegations:

> Violation of Community Corrections Rule #11: Mr. Espinoza was arrested by agents of [ICE] on January 16, 2015, for unlawful presence in the United States.  Upon being searched after arrest, ICE agent recovered a pipe from the Defendant's person which he admitted was used for smoking marijuana.

> Violation of Rule #4: Client has failed to make payment toward his court cost, fines, and fees.

According to documents submitted to the trial court, Defendant was deported to his native Guatemala in June 2015.  Defendant then illegally re-entered the United States but was apprehended by U.S. Border Patrol.  In July 2016, Defendant pled guilty in federal criminal court to illegal re-entry by a deported alien and was sentenced to sixteen months of imprisonment followed by three years of supervised release.  In July 2017, Defendant applied for asylum under the Convention Against Torture Act, and the immigration court granted Defendant a "Deferral of Removal" on September 5, 2017.  After his release from federal custody in October 2017, Defendant was extradited from New Mexico to Tennessee based on the February 2015 violation warrant.

The trial court held a revocation hearing on January 4, 2018.[1]  The only proof submitted to the trial court by the State was evidence of Defendant's federal conviction from the U.S. District Court for the Southern District of Texas.  Defense counsel stated, "we've agreed to the admission of those documents into evidence."  Defense counsel stated that he wished to submit a formal brief and reserve argument until the sentencing hearing about what he contended to be "the unique nature of the violation."  The trial court stated, "Well, obviously, one, he's not supposed to commit any other offense while on some form of community release, and that occurred nearly two years after he was sentenced in this particular case. . . . So, obviously, he's violated terms of his community release."  The trial court issued a written order finding Defendant "guilty of violating one

---

[1] The transcript of this hearing was not originally included in the record before this Court. However, we deemed a transcript of this hearing to be necessary for our review of the issues raised on appeal and issued an order to supplement the record.

or more terms of his Community Corrections" and set the matter for a resentencing hearing.

On March 1, 2018, Defendant filed a Motion to Concede Probation Violation and Reinstate Probation ("Motion to Concede"). The motion alleged that the February 2015 violation warrant "cannot be accurate, since apprehension by ICE is not a criminal offense" and that "undersigned counsel has seen no proof validating the details of said apprehension by ICE, nor any evidence of an admission by Yoc of possessing any drug paraphernalia, or of any criminal prosecution for any such alleged crime." However, Defendant conceded in his motion that his July 2016 federal guilty plea "would amount to a violation of the terms of his probation" and stated that he "will concede to an amended violation of probation based on such guilty plea."

On March 2, 2018, the trial court held a resentencing hearing. At the beginning of the hearing, the trial court noted that Defendant "previously pled guilty to a violation of his alternative sentencing" and that it would "incorporate by reference the facts that came out at the probation revocation plea or community corrections plea." The State entered into evidence an updated presentence report. Defense counsel argued that the January 16, 2015 "arrest" by ICE alleged in the violation warrant "is not a criminal violation." Defense counsel argued that Defendant did not plead guilty to the federal criminal offense of illegal re-entry until a year and a half after the issuance of the violation warrant but conceded that the trial court could issue an amended violation warrant. The trial court stated that any problem with the original violation warrant "was cured by his plea" at the revocation hearing.

As to the federal conviction, defense counsel stated that Defendant assured him that he had originally tried to apply for asylum prior to being deported, and defense counsel argued that "if he had gained the asylum application prior to crossing the border, he never would have had the [federal] guilty plea." According to defense counsel, "from a humanitarian point of view" even if "not legally," the subsequent grant of asylum should in effect "cure[]" Defendant's federal conviction. Defense counsel argued that because Defendant was already under the supervision of both the federal criminal court and ICE, "he would be a perfect candidate to continue a supervision [sic] under community corrections."

Defendant testified through a translator that he initially attempted to apply for asylum prior to being deported. After he was deported to Guatemala, Defendant fled because he and his family were having problems with the police and he was afraid for his life. Defendant initially went to Mexico, but he had problems with drug cartels there. When Defendant arrived at the U.S. border, he did not initially apply for asylum because he did not know how. Defendant testified that when he was granted asylum, the immigration judge told him that he could be deported again if he got into any trouble.

Defendant testified that he was also under the supervision of the federal criminal court. Defendant testified that if he were to be released, he had a place to live and the ability to be gainfully employed.

The trial court asked why Defendant would say that he had problems with the drug cartels, and Defendant responded that the Mexican government was "going after people that don't have paper[s]" in their attempt "to get the people who's [sic] trafficking or doing this stuff with the drugs." After some back and forth confusion with the trial court, defense counsel attempted to clarify that Defendant encountered the Mexican authorities because they suspected that he could be a member of the cartel due to his immigration status. Defendant agreed that he was afraid that the cartels were going to try to recruit him or force him to be a drug mule because he was in Mexico illegally. Defendant denied having a personal connection to or assisting any cartel in transporting drugs. The State asked on cross-examination where Defendant had obtained the drugs he was convicted of selling to an undercover officer in Tennessee, and Defendant denied ever selling drugs to anyone.

During its oral ruling, the trial court noted that although Defendant pled guilty to the criminal offense of illegal re-entry after the issuance of the original violation warrant, the warrant could have been amended, but defense counsel "prudently chose not to make an issue of that." The trial court found that because Defendant conceded violating the terms of his community corrections sentence, he had adequate notice and was not "surprise[d]" about the basis for the revocation. The trial court also noted that a federal conviction for illegal re-entry was more serious than a conviction for something like driving on a suspended license, as reflected by the three-year sentence Defendant received from the federal criminal court.

In resentencing Defendant, the trial court noted that he was a Range I offender but that "establishing a prior [criminal] history" for undocumented aliens is often "difficult." The trial court stated that it had given Defendant the benefit of the doubt when it imposed the original split confinement sentence with the maximum of one year of incarceration and the remainder on community corrections. The trial court did not find any mitigating factors, specifically rejecting "the theory that the criminal conduct neither caused nor threatened serious bodily injury" due to "the serious nature of the drugs." The trial court rejected the State's suggestion to sentence Defendant to the maximum in his range but added an additional year to Defendant's sentence for a total effective sentence of ten years.

In determining whether to grant Defendant another alternative sentence, the trial court "look[ed] at all the considerations, just as I looked at in the original sentencing." The trial court noted that community corrections is "usually . . . the last stop . . . for an individual before they have a TDOC sentence." The trial court was concerned that

Defendant was convicted of selling an ounce of cocaine, which was "a substantial amount of drugs," and that he testified about encountering drug cartels "in some capacity" while in Mexico. The trial court stated that it had given Defendant "the opportunity for redemption" but that Defendant did not "seize upon that to the full extent that he possibly could have." The trial court also noted that because Defendant was deported almost immediately after being released from incarceration, he never reported to a probation officer. The trial court ruled that Defendant would serve his sentence in TDOC custody with credit for the initial year he served and "whatever other time since he's arrived back in Tennessee[.]" Defense counsel asked if the trial court would grant Defendant "concurrent credit" for the time he served in federal custody. The trial court denied that request but granted Defendant credit from the time he waived extradition.[2]

The trial court issued a written order finding that Defendant had "admitted that he had violated the terms of his [c]ommunity [c]orrections," revoking his community corrections sentence, and imposing a sentence of ten years to serve in TDOC custody. The trial court granted Defendant sentencing credit from February 12, 2014 (the date of his original conviction) to February 19, 2015 (the date the violation warrant was issued) and from November 8, 2017 (the date the violation warrant was served) to March 2, 2018 (the date Defendant's sentence was placed into effect). Defendant filed a timely notice of appeal.

*Analysis*

On appeal, Defendant argues that the violation warrant issued on February 19, 2015, was invalid and was not a proper basis for the revocation of his community corrections sentence. Defendant asserts that his detention by ICE, which led to his deportation, was a civil matter rather than an arrest for new criminal activity and that there was no evidence presented to support the other allegations in the warrant. Defendant asserts that because the original warrant is invalid, he is entitled to sentencing credit until March 1, 2018, the date he filed his Motion to Concede based on his July 2016 federal criminal conviction for illegal re-entry. Finally, Defendant argues that the trial court abused its discretion in resentencing Defendant by increasing his sentence one year and by denying his request to remain on community corrections.

---

[2] The trial court stated during the resentencing hearing that it would give Defendant credit from November 8, 2017, based on the execution date on the violation warrant unless defense counsel "later find[s] something to the contrary." Attached to Defendant's appellate brief is a document purporting to be an Order for Extradition on Waiver from the magistrate court in Otero County, New Mexico, showing that Defendant waived extradition on October 27, 2017. Documents merely attached to briefs cannot be considered by this Court because they are not properly a part of the certified record. *See State v. Matthews*, 805 S.W.2d 776, 783-84 (Tenn. Crim. App. 1990). If there is a clerical error on the judgment form, Defendant will need to address that issue with the trial court.

## I. Standard of Review

"The Community Corrections Program was created as an alternative to incarceration that provides flexibility and promotes accountability, while reducing the number of 'nonviolent felony offenders' in the state prison system." *State v. Dennis Karr*, No. E2014-01245-CCA-R3-CD, 2015 WL 1593635, at *4 (Tenn. Crim. App. Apr. 7, 2015) (citing T.C.A. § 40-36-104; *State v. Estep*, 854 S.W.2d 124, 126-27 (Tenn. Crim. App. 1992)), *no perm. app. filed*. "While the program provides defendants with freedom that would otherwise be removed if the defendant had been incarcerated, there are specific remedies available to the trial court to ensure that those who fail to comply with the program are sufficiently penalized for their noncompliance." *Id*. (citing T.C.A. § 40-36-106(e)(4)).

The procedures for revocation of probation and community corrections are similar, and the same legal principles apply. *State v. Harkins*, 811 S.W.2d 79, 83 (Tenn. 1991). A trial court may "revoke a sentence of probation or a suspended sentence upon a finding that the defendant has violated the conditions of his probation or suspended sentence by a preponderance of the evidence." *Id.* at 82 (citing T.C.A. § 40-35-311); *see* T.C.A. § 40-36-106(e)(3)(B). Proof of a violation "need not be established beyond a reasonable doubt, but it is sufficient if it allows the trial judge to make a conscientious and intelligent judgment." *Harkins*, 811 S.W.2d at 82. On appeal, this Court will review a trial court's decision to revoke a community corrections sentence under an abuse of discretion standard of review. *Id*. To find an abuse of discretion, the record must contain no substantial evidence to support the conclusion of the trial judge that a violation has occurred. *Id*. In reviewing the trial court's findings, it is our obligation to examine the record and determine whether the trial court has exercised a conscientious judgment rather than an arbitrary one. *State v. Mitchell*, 810 S.W.2d 733, 735 (Tenn. Crim. App. 1991).

## II. Validity of Violation Warrant

Defendant's argument regarding the validity of the original warrant focuses almost exclusively on his contention that his detention by ICE was not an arrest for new criminal activity but was instead the initiation of civil immigration proceedings. Relying on federal immigration law, Defendant asserts that "entering the United States without official permission is illegal, and if prosecuted as a criminal offense could subject the offending alien to possible fines and jail time; however, the general process of 'removing' an alien is a civil process, overseen by immigration judges." *See Arizona v. United States*, 132 S.Ct. 2492, 2499 (2012) ("Removal is a civil, not criminal, matter.").

However, Defendant cites no law to support his contention that this type of "civil detention" by federal immigration authorities – though based on the admittedly illegal

activity of entering and remaining in the United States without permission and which could just as easily have led to criminal prosecution – is an invalid valid basis for a violation warrant, thereby risking waiver of this issue. *See* Tenn. R. Ct. Crim. App. 10(b) ("Issues which are not supported by argument, citation to authorities, or appropriate references to the record will be treated as waived in this court."). Additionally, while Defendant argued in his Motion to Concede that the violation warrant "cannot be accurate, since apprehension by ICE is not a criminal offense," at no point did he assert as a defense that the trial court should dismiss the original violation warrant, further waiving the issue. *See State v. Karen Jo Williams*, No. M2012-02043-CCA-R3-CD, 2013 WL 3128652, at *6 (Tenn. Crim. App. June 19, 2013) ("The proper forum to assert defenses, such as the invalidity of the [revocation] warrant, is before the trial court."), *no perm. app. filed*; *see also State v. Kenneth Shane Story*, No. M2005-02281-CCA-R3-CD, 2006 WL 2310534, at *2 (Tenn. Crim. App. Aug. 9, 2006) (citing *Hester v. State*, 450 S.W.2d 609, 611 (Tenn. Crim. App. 1969)) ("Generally, appellate courts review only questions presented for determination in the trial court."), *perm. app. denied* (Tenn. Dec. 27, 2006).

Despite any waiver, it would appear that Defendant's contention is a distinction without a difference. Regardless of whether one classifies detention by federal immigration authorities as criminal or civil, a trial court may not rely upon the mere fact of an arrest to revoke a defendant's suspended sentence and must instead determine by a preponderance of the evidence that the defendant violated the law. *See State v. John Edward Winn, Jr.*, No. M2009-00094-CCA-R3-CD, 2010 WL 2516855, at *2-3 (Tenn. Crim. App. June 22, 2010) (citing *Harkins*, 811 S.W.2d at 83 n.3), *no perm. app. filed*. Furthermore, the detention itself was not the sole or even the primary violation alleged in the warrant, which also alleged Defendant's possession of drug paraphernalia and failure to pay court costs and fees. Finally, Defendant conceded that his federal conviction for illegal re-entry violated the conditions of his community corrections sentence and that he would agree to an amendment of the violation warrant to include this allegation. *See State v. Shaffer*, 45 S.W.3d 553, 555-56 (Tenn. 2001) (holding that the trial court did not abuse its discretion in revoking probation based on allegations in an amended warrant).

We note that no amended violation warrant was ever filed in this case. Typically, the revocation of a suspended sentence based upon grounds not alleged in the violation warrant is a violation of due process. *See State v. Chad Allen Conyers*, No. E2004-00360-CCA-R3-CD, 2005 WL 551940, at *4 (Tenn. Crim. App. Mar. 9, 2005), *no perm. app. filed*; *see Gagnon v. Scarpelli*, 411 U.S. 778, 786 (1973) (holding that defendants are entitled minimum due process rights in revocation proceedings, including "written notice of the claimed violations"). However, under the relaxed due process standards of a probation revocation proceeding, actual notice of an alleged violation is sufficient. *State v. Christopher Lynch*, No. E2001-00197-CCA-R3-CD, 2002 WL 554462, at *3 (Tenn. Crim. App. Apr. 16, 2002) (citing *State v. Clifford W. Jackson*, No. 02C01-9802-CR-

00041, 1999 WL 615742, at *4 (Tenn. Crim. App. Aug. 13, 1999); *State v. James C. Wolford*, No. 03C01-9708-CR-00319, 1999 WL 76447, at *7 (Tenn. Crim. App. Feb. 18, 1999), *perm. app. denied* (Tenn. Sept. 20, 1999); *State v. Peck*, 719 S.W.2d 553, 557 (Tenn. Crim. App. 1986); *Stamps v. State*, 614 S.W.2d 71, 73-74 (Tenn. Crim. App. 1980)), *no perm. app. filed*.

This Court has previously found error in a trial court's reliance on convictions stipulated by defense counsel that were not alleged in the violation warrant; however, we concluded that the error was harmless given the trial court's reliance on other, properly noticed grounds. *State v. Ricky Davis*, No. 03C01-9706-CC-00215, 1998 WL 205925, at *2 (Tenn. Crim. App. Apr. 29, 1998). In this case, the trial court seemed to rely exclusively on Defendant's federal conviction in revoking his community corrections sentence; the State did not submit any evidence to support the allegations in the original warrant, and Defendant denied them in his Motion to Concede. However, Defendant specifically waived any due process challenge to the trial court's reliance on his federal conviction and does not raise a due process argument on appeal. *See* Tenn. R. App. P. 36(a) ("Nothing in this rule shall be construed as requiring relief be granted to a party responsible for an error or who failed to take whatever action was reasonably available to prevent or nullify the harmful effect of an error."). Moreover, it is clear that Defendant had actual notice of the alleged violation based on his agreement that the documents related to his conviction could be admitted into evidence at the revocation hearing and based on his concession in his Motion to Concede. At the resentencing hearing, the trial court specifically found that defense counsel "prudently chose not to make an issue of" the lack of an amended warrant and that Defendant had adequate notice and was not "surprise[d]" about the basis for the revocation. "Although written notice may be preferred, we conclude that the appellant was not prejudiced, misled, or surprised by the court's failure to issue written notice." *James C. Wolford*, 1999 WL 76447, at *7.

Finally, there is sufficient evidence to support the trial court's revocation of Defendant's community corrections sentence. The State submitted documents from Defendant's federal conviction for illegally re-entering the country after having been deported, and Defendant conceded that this conviction violated the terms of his suspended sentence. "[A d]efendant's admission that he violated the terms of his probation, alone, constitutes substantial evidence to support the revocation of probation." *State v. Ross Pruitt*, No. E2015-01494-CCA-R3-CD, 2016 WL 3342356, at *4 (Tenn. Crim. App. June 8, 2016), *no perm. app. filed*; *see also State v. Timothy Jerome Washington*, No. E2008-00515-CCA-R3-CD, 2009 WL 2263850, at *5 (Tenn. Crim. App. July 29, 2009) ("[W]hen a defendant admits engaging in conduct constituting a crime while serving a community corrections sentence, a trial court is not precluded from revoking the sentence using this ground as the basis for revocation."), *no perm. app. filed*; *State v. Johnson*, 15 S.W.3d 515, 518 (Tenn. Crim. App. 1999) (holding that a defendant's concession constitutes substantial evidence of a violation, and the trial

court's revocation based thereon is not an abuse of discretion). We conclude that the trial court did not abuse its discretion in revoking Defendant's community corrections sentence.

### III. Sentencing Credit

When a trial court revokes a community corrections sentence, the defendant is statutorily entitled to sentencing credit toward time actually spent in the community corrections program prior to the revocation. *See* T.C.A. § 40-36-106(e); *Carpenter v. State*, 136 S.W.3d 608, 612 (Tenn. 2004). "The award of credit for time served on community corrections is mandatory, and the trial court has no authority to deny credit no matter how lackluster or unsuccessful the defendant's performance." *Jackson v. Parker*, 366 S.W.3d 186, 190 (Tenn. Crim. App. 2011) (internal quotation and citation omitted). However, a defendant's entitlement to these sentencing credits terminates upon the issuance of a violation warrant. *State v. McNack*, 356 S.W.3d 906, 912 (Tenn. 2011) (relying on *State v. Shaffer*, 45 S.W.3d 553 (Tenn. 2001)). "The interruption of the probationary period is triggered by the issuance of the probation revocation warrant and not by service of the warrant on the defendant." *Shaffer*, 45 S.W.3d at 555 (citing *Allen v. State*, 505 S.W.2d 715, 717 (Tenn. 1974)).

Defendant asserts that he is entitled to sentencing credit from April 21, 2014, the date of the original judgment in this case, through March 1, 2018, the date he filed his Motion to Concede. Defendant contends that because the original violation warrant filed on February 19, 2015, was "improper, and in any case was never pursued, nor was it the basis of the eventual revocation of the [Defendant's] community corrections sentence," it should not serve to toll the accumulation of sentencing credits. The State argues that Defendant waived this issue because he did not challenge the calculation of sentencing credits in the trial court. We agree with the State.

Other than asking the trial court for concurrent credit for the sixteen months he spent incarcerated on his federal criminal conviction, Defendant did not argue in the trial court that the original violation warrant should be dismissed or that it should not toll the accumulation of sentencing credits for time actually served in community corrections. Again, we will not address issues that were not first raised in the trial court. *See* Tenn. R. App. P. 36(a); *Kenneth Shane Story*, 2006 WL 2310534, at *2. Moreover, in his appellate brief, Defendant cites no law for the proposition that the invalidity or dismissal of an original violation warrant entitles a defendant to sentencing credits up to the date of the issuance of an amended warrant. *See* Tenn. R. Ct. Crim. App. 10(b). This issue is waived, and Defendant is not entitled to relief.

### IV. Resentencing

After a trial court determines that a violation has occurred, the court has the authority to revoke the community corrections sentence and may "resentence the defendant to any appropriate sentencing alternative, including incarceration, for any period of time up to the maximum sentence provided for the offense committed, less any time actually served in any community-based alternative to incarceration." T.C.A. § 40-36-106(e)(4). A trial court's decision as to the proper consequence for a violation embodies a separate exercise of discretion from the initial finding that a violation has occurred. *State v. Hunter*, 1 S.W.3d 643, 647 (Tenn. 1999). "Unlike a revocation of probation proceeding, a new and longer sentence, so long as within the range prescribed by statute, is within the trial court's discretion." *McNack*, 356 S.W.3d at 911. If the trial court choses to "resentence a defendant to a sentence more severe than the original, the trial court must conduct a sentencing hearing pursuant to the principles of the Sentencing Reform Act." *State v. Crook*, 2 S.W.3d 238, 240 (Tenn. Crim. App. 1998) (citations omitted); *see* T.C.A. § 40-36-106(e)(4) ("The resentencing shall be conducted in compliance with § 40-35-210."). "The purpose of this statute is to permit a trial court to impose a new sentence if the nature, circumstances, and frequency of the accused's violations warrant a different type of alternative sentence or incarceration." *State v. Ervin*, 939 S.W.2d 581, 583 (Tenn. Crim. App. 1996). While "[t]he statute should not be used by trial courts for the sole and exclusive purpose of punishing an accused for violating provisions of a community corrections sentence," *id.*, this Court has recognized that "facts which have developed between the time a defendant is initially sentenced to community corrections, and the time that the sentence is subsequently revoked, may be considered in applying enhancement factors and increasing a sentence." *State v. Dale Godwin*, No. W2001-00212-CCA-R3-CD, 2001 WL 1690198, at *6 (Tenn. Crim. App. Dec. 14, 2001), *perm. app. denied* (Tenn. May 6, 2002).

The trial court's sentencing decision is reviewed on appeal under an abuse of discretion standard with a presumption of reasonableness. *State v. Bise*, 380 S.W.3d 682, 707 (Tenn. 2012); *see also State v. Caudle*, 388 S.W.3d 273, 278-79 (Tenn. 2012) (applying *Bise* standard to "questions related to probation or any other alternative sentence"). "A sentence should be upheld so long as it is within the appropriate range and the record demonstrates that the sentence is otherwise in compliance with the purposes and principles listed by statute." *Bise*, 380 S.W.3d at 709-710. The party appealing the sentence has the burden of demonstrating its impropriety. T.C.A. § 40-35-401, Sent'g Comm'n Cmts.; *see also State v. Ashby*, 823 S.W.2d 166, 169 (Tenn. 1991).

In determining the appropriate sentence length and manner of service, the trial court shall consider the following:

(1) The evidence, if any, received at the trial and the sentencing hearing;
(2) The presentence report;

(3) The principles of sentencing and arguments as to sentencing alternatives;

(4) The nature and characteristics of the criminal conduct involved;

(5) Evidence and information offered by the parties on the mitigating and enhancement factors set out in §§ 40-35-113 and 40-35-114;

(6) Any statistical information provided by the administrative office of the courts as to sentencing practices for similar offenses in Tennessee;

(7) Any statement the defendant wishes to make on the defendant's own behalf about sentencing; and

(8) The result of the validated risk and needs assessment conducted by the department and contained in the presentence report.

T.C.A. § 40-35-210(b). The trial court should also consider the defendant's potential for rehabilitation or treatment. T.C.A. § 40-35-103(5); *see also Bise*, 380 S.W.3d at 697-98. Additionally, the sentence imposed "should be no greater than that deserved for the offense committed" and "should be the least severe measure necessary to achieve the purposes for which the sentence is imposed." T.C.A. § 40-35-103(2), (4). Confinement is considered appropriate for those defendants to whom measures less restrictive than confinement have been frequently or recently applied. T.C.A. § 40-35-103(1)(C).

The weighing of various enhancement and mitigating factors is within the sound discretion of the trial court. *State v. Carter*, 254 S.W.3d 335, 345 (Tenn. 2008). "[A] trial court's misapplication of an enhancement or mitigating factor does not invalidate the sentence imposed unless the trial court wholly departed from the 1989 Act, as amended in 2005." *Bise*, 380 S.W.3d at 706. "So long as there are other reasons consistent with the purposes and principles of sentencing, as provided by statute, a sentence imposed by the trial court within the appropriate range should be upheld." *Id.* Moreover, "[m]ere inadequacy in the articulation of the reasons for imposing a particular sentence . . . should not negate the presumption [of reasonableness]." *Bise*, 380 S.W.3d at 705-06.

In this case, the trial court increased Defendant's sentence by one year and ordered that Defendant serve his sentence in incarceration. This within-range sentence is entitled to a presumption of reasonableness. Defendant complains that the trial court did not specifically cite the sentencing statutes. However, the trial court thoroughly articulated the reasons behind its sentencing decision. The trial court considered the presentence report, the facts of the original offense, the facts surrounding the subsequent violation, Defendant's testimony at the hearing, and the arguments of counsel relative to the sentence. The trial court rejected any mitigating factors and considered as an enhancing factor the fact that Defendant now had a federal conviction for illegal re-entry. The trial court found that Defendant had not demonstrated a potential for rehabilitation and that community corrections was usually a "last stop" before incarceration. This Court has "repeatedly cautioned that 'an accused, already on probation, is not entitled to a second

- 11 -

grant of probation or another form of alternative sentencing.'" *State v. Casey Dupra Drennon*, No. M2014-02366-CCA-R3-CD, 2015 WL 6437212, at \*2 (Tenn. Crim. App. Oct. 23, 2015) (quoting *State v. Jeffrey A. Warfield*, No. 01C01-9711-CC-00504, 1999 WL 61065, at \*2 (Tenn. Crim. App. Feb. 10, 1999), *perm. app. denied* (Tenn. Jun. 28, 1999)), *no perm. app. filed*; *see also State v. Timothy A. Johnson*, No. M2001-01362-CCA-R3-CD, 2002 WL 242351, at \*2 (Tenn. Crim. App. Feb. 11, 2002), *no perm. app. filed*. The trial court did not abuse its discretion either in increasing Defendant's sentence or in ordering that he serve the sentence in incarceration.

*Conclusion*

Based on the foregoing, we affirm the judgment of the trial court.


_____
TIMOTHY L. EASTER, JUDGE